No. 24-2370

_____

_____

In the
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ADEL DAOUD,
Defendant-Appellant.

_____

Appeal from the United States District Court,
Northern District of Illinois,
Eastern Division
Case Nos.
1:12-CR-723-1
1:13-CR-703-1
1:15-CR-487-1

The Honorable Matthew F. Kennelly, Presiding

_____

*ADEL DAOUD'S OPENING BRIEF AND REQUIRED SHORT
APPENDIX*

DATE:     December 3, 2025     Respectfully submitted,

                              By:   s/Andréa E. Gambino
                                    Attorney for Adel Daoud

**ORAL ARGUMENT REQUESTED**

## *DISCLOSURE STATEMENT*

1.     The Defendant-Appellant is ADEL DAOUD.

2.     Attorneys MiAngel C. Cody, The Decarceration Collective, 1325 S. Wabash, Chicago, Il. 60605; Steven R. Hunter, Law Offices, 900 W. Jackson Blvd., Chicago, Il. 60607; Thomas A. Durkin, Janis D. Roberts, Robin V. Waters, and Ronald Cecil Jones, II, Durkin & Roberts, 209 S. LaSalle, Chicago, Il. 60604; Andrea Lyon, Lyon & Kerr, 53 W. Jackson Blvd., Chicago, Il. 60604; Joshua G. Herman, Law Office, 53 W. Jackson Blvd., Chicago, Il. 60604; Quinn A. Michaelis, Law Office, 73 W. Monroe, Chicago, Il. 60603; and Adel Daoud, *Pro Se,* represented Mr. Daoud before the District Court.

3.     Quinn A. Michaelis, Law Office, 73 W. Monroe, Chicago, Il. 60603, represented Mr. Daoud before this Court. Ms. Gambino, Law Office of Andréa E. Gambino, 53 W. Jackson Blvd., Suite 1332, Chicago, Illinois 60604, is current attorney of record for Mr. Daoud before this court.

4.     There is no corporate party, amicus or intervenor in this case.

5.     There are no Organizational Victims in this case.

6.     Debtor information is not applicable in this case.

s/Andréa E. Gambino
Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312) 322-0014
andrea@gambinodefense.com

# TABLE OF CONTENTS

DISCLOSURE STATEMENT……………………………………….......ii

TABLE OF AUTHORITIES…………………………………….......……..v

JURISDICTIONAL STATEMENT………………………………....…….1

STATEMENT OF THE ISSUES……………………………………..….3

STATEMENT OF THE CASE……………………………………….…..4

SUMMARY OF ARGUMENT…………………………………….......34

ARGUMENT......................................................................................35

    I.    The District Court erred in failing to grant Adel Daoud's Motion to  Withdraw his *Alford* Plea......................................35

        A.    Standard of Review...........................................................35

        B.    The District Court abused its discretion in holding Adel Daoud to his *Alford* plea, in violation of his Fifth and Sixth Amendment rights.......................................................36

        C.    The District Court erred in analyzing Adel Daoud's motion to withdraw an *Alford* plea.............................39

        D.    Adel Daoud has fair and just reasons for granting his motion to withdraw the *Alford* plea.............................52

    II.    The District Court erred in allowing Adel Daoud to represent himself without  ensuring that the waiver of his right to representation was both knowing and  intelligent..............61

        A.    Standard of Review...........................................................61

B.    The right to self-representation must be undertaken
knowingly and intelligently..........................................61

C.    The *Faretta* colloquy in this case was insufficient...65

III.   The District Court's decision to allow Adel Daoud to
represent himself at sentencing resulted in an unreasonable
sentence. .......................................................................73

A.    Standard of Review.............................................73

B.    The Court erred in allowing Mr. Daoud to represent
himself at sentencing to Adel's severe disadvantage...........74

C.    Adel Daoud's mental health condition was a critical
factor consider in determining the appropriate
sentence for Adel, but he did not permit it..................82

CONCLUSION................................................................83

CERTIFICATE OF COMPLIANCE
WITH F.R.A.P. RULE 32(a)(7)(B)................................................85

CIRCUIT RULE 31(e)(1) CERTIFICATION................................86

PROOF OF SERVICE.................................................................87

CIRCUIT RULE 30(d) STATEMENT.......................................88

ATTACHED REQUIRED SHORT APPENDIX.............................89

# TABLE OF AUTHORITIES

## CASES

*Andrus v. Texas*, 590 U.S. 806  (2020) ....................................................76

*Boykin* v. *Alabama,* 395 U.S. 238 (1969); ...............................................37

*Dusky v. United States*, 362 U.S. 402 (1960) .....................................62, 68

*Faretta v. California,* 422 U.S. 806  (1975)............................................59

*Graham v. Florida*, 560 U.S. 48 (2010). ...........................................71, 76

*Henderson v. Morgan*, 426 U.S. 637 (1976). .........................................37

*Indiana v. Edwards*, 554 U.S. 164 (2008),..............................................69

*Kelly v. Brown*, 851 F.3d 686 (7th Cir. 2017). .......................................75

*Mathews v. United States*, 485 U.S. 58 (1988).......................................51

*Miller v. Alabama*, 567 U.S. 460  (2012)..........................................71, 74

*North Carolina v. Alford*, 400 U.S. 25 (1970) ...................................36,46

*Parke v. Raley*, 506 U.S. 20 (1992)..........................................................37

*Porter* v. *McCollum*, 558 U. S. 30 (2009) ..............................................76

*Pruitt v. Neal*, 788 F.3d 248 (7th Cir. 2015) ..........................................55

*Rompilla v. Beard*, 545 U.S. 374 (2005), ...............................................55

*Roper* v. *Simmons*, 543 U.S. 551(2005) ..........................................71, 75

*Tatum v. Foster*, 847 F.3d 459 (7th Cir. 2017) .................................62, 69

*United States v. Anderson,* 55 F.4th 545 (7th Cir. 2022)........................54

*United States v. Barr,* 960 F.3d 906 (7th Cir. 2020),.............................41

*United States v. Buckley*, 847 F.2d 991 (7th Cir. 1991)....................48, 49

*United States v. Cook,* 668 F.2d 317 (7th Cir. 1982) .............................38

*United States v. Daoud*, 2024 U.S. Dist. LEXIS 42104 .. 39, 46, 47, 48, 50

*United States v. Ellison,* 798 F.2d 1102 (7th Cir. 1986).............35, 43,44

*United States v. Erskine*, 355 F.3d 1161  (9th Cir. 2004) .......................67

*United States v. Gomez-Orozco*, 188 F.3d 422  (7th Cir. 1999)...............45

*United States v. Graf,* 827 F.3d 581 (7th Cir. 2016) ...............................42

*United States v. Hodges*, 259 F.3d 655 (7th Cir. 2001)...........................45

*United States v. Ivory,* 11 F.3d 1411 (7th Cir. 1993). ............................38

*United States v. Johnson*, 980 F.3d 570 (7th Cir. 2020)........................60

*United States v. Jones*, 65 F.4th 926, 929 (7th Cir, 2023 .................59,66

*United States v. Petre*, 2025 U.S. App. LEXIS 25751, 2025 WL 2813609. ...................................................................................70

*United States v. Pillado*, 656 F.3d 754(7th  Cir. 2011)...........................54

*United States v. Rinaldi*, 461 F.3d 922 (7th Cir. 2006) .........................39

*United States v. Schilling,* 142 F.3d 388 (7th Cir. 1998).......................41

United States v. Stewart, 198 F.3d 984..........................................43, 44

*United States v. Vizcarra-Millan*, 15 F.4th 473 (7th Cir. 2021)............59

*Williams* v. *Taylor*, 529 U. S. 362 (2000) .................................................76

## STATUTES

Title 18, United States Code, Section 3231 ............................................ 1

Title 18, United States Code, Section 3742(a). ...................................... 1

Title 28, United States Code, Section 1291 ............................................ 1

*JURISDICTIONAL STATEMENT*

This is a direct appeal from criminal convictions and sentences in the United States District Court for the Northern District of Illinois, following remand to the District Court for resentencing.

The jurisdiction of the district court was based on Title 18, United States Code, Section 3231. This Court of Appeals has jurisdiction pursuant to Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742(a).

Adel Daoud was indicted in three cases, charging him with violations of the laws of the United States: (1) in case number 12-CR- 723, Title 18, United States Code, Section 2332(a)(2)(D) and Title 18, United States Code, Section 844(i); (2) in case number 13-CR-703, Title 18, United States Code, Section 373(a), Title 18, United States Code, Section 1958(a), and Title 18, United States Code, Section 1512(a)(1)(A); and (3) in case number 15-CR-487, Title 18, United States Code, Sections 113(a)(1), (a)(3), (a)(4), (a)(6) and Title 18, United States Code, Section 1791(a)(2) and (b)(3).

The District Court originally sentenced Adel Daoud to 16 years' incarceration. The Government appealed. Upon remand from this

Court, the District Court re-sentenced Adel Daoud to 27 years' imprisonment, from which he appeals.

Final judgment was entered on July 31, 2024. R. 573, R. 247, and R. 258. An Amended Judgement was entered on August 5, 2024. R. 575, R. 249, R. 260. A Second Amended Judgment was entered on August 8, 2024. R. 584, R. 257, R. 269.

Notice of appeal was timely filed on August 6, 2024, and entered on August 6 and 7, 2024.  R. 576 and 577, R. 250 and 253, R. 261 and 262.

## STATEMENT OF ISSUES

Whether the District Court abused its discretion in denying Mr. Daoud's Motion to Withdraw *Alford* Plea?

Whether the District Court erred in permitting Mr. Daoud to represent himself *pro se*, without a full *Faretta* Hearing?

Whether the new sentence was substantively unreasonable because Mr. Daoud, having been permitted to represent himself, was prejudiced by failing to present mitigating mental health and other evidence at sentencing?

## STATEMENT OF THE CASE

On March 15, 2021, Mr. Daoud's consolidated appeals were remanded to the District Court, pursuant to Circuit Rule 36. R. 366, 367.

On October 5, 2021, Mr. Daoud's attorneys filed a joint motion to withdraw as counsel for Mr. Daoud. R. 381. The Motion was in response to *pro se* filings by Mr. Daoud. A hearing on this motion was held on October 20, 2021. R. 387, 390.

Counsel for Mr. Daoud had been working as appointed counsel for nearly a decade. R. 390, p. 5. Counsel was concerned about whether Adel was taking his medication: "I also think that someone needs to determine whether he's on his medication. He was found competent to proceed only on medication. And we do know that he was -- when he was at the BOP, he was getting it by injection. Since he's been here, he's getting it in pill form. I don't know whether he's taking his medication or not." R. 390, p. 9.

Adel Daoud's attempt to discharge counsel coincided with his attorneys' concern that Adel was not taking his medication and that his mental state was deteriorating. The Court appointed additional counsel

to consult with Adel Daoud about discharging his attorneys and set a new hearing date.

On January 27, 2022, the Court entered an Order allowing counsel to withdraw and appointing new counsel. R. 402. Counsel Michaelis reported to the Court that until December 2021, medical records indicated that Adel Daoud was taking his medication, although it was not clear from the record whether this meant taking the pill and "cheeking" it, or taking the pill and consuming it.  R. 438, p. 4.

Dr. Nowakowski, who was managing Adel Daoud's care, reported that "he came to us from the other institution on June 23rd. He was compliant up until about October; November he probably missed a handful of doses; and then, in December, his compliance was intermittent. And in the beginning of January -- I don't know if you have this MAR --he was compliant up until the 11th, but in the last -- since that time, he has refused. So, he hasn't been taking it, far as I can tell, with -- since the 11th. That was his last dose." R. 438, p. 6.

At the time of the hearing, Adel had not been taking medication for 16 days. The doctor reported that: "So, when you're taking a medication such as this and you miss more than four to five consecutive

doses, it's pretty much out of your system. But the effect of having been on it, if you had it properly equilibrated --which he has with all of his compliance prior to that -- you know, the medication is pretty much out of your system after you've missed four to five doses. So, in the months where his compliance started to drop -- that would be November and December -- I would not say that there would be an expected change in the therapeutic efficacy because he only missed a dose in sporadic doses, not consecutively." *Id.* at 7.

Counsel Durkin disagreed with the opinions of the MCC staff and persisted in his request for competency for Mr. Daoud. Counsel also indicated that the Court should hear from Dr. Xenakis who had been working with Adel for some time.  Dr. Xenakis found Adel to be competent while taking his medication, but "Dr. Xenakis now has a different opinion of that, which we quoted in the pleading. I think that's important. Dr. Xenakis has a long history with him."  R. 438, p. 11.

After Judge Kennelly was assigned to the case on September 12, 2022, R. 415, the parties informed the Court that the government was prepared to proceed to sentencing and that the defendant was planning to file a Motion to Withdraw the *Alford* plea. R. 416.

During the briefing on the Motion to Withdraw *Alford* Plea, Adel Daoud filed his third Motion to Remove Counsel. R. 424.

On December 20, 2022, the District Court held a hearing at which it denied Mr. Daoud's Motion to Withdraw *Alford* Plea and granted the Motion to Remove Counsel, allowing Adel Daoud to proceed *pro se* with Attorney Michaelis as stand-by counsel. R. 426.

In early January 2023, Mr. Daoud filed a Motion to Dismiss the Indictment Due to Plain Error, R. 430; a Motion to Dismiss, R. 435. The District Court entered an order denying the Motion to Dismiss on January 11, 2023. R. 433. The Court informed Mr. Daoud that he misunderstood the elements of the charge against him. R. 433, p. 1. The Court further stated that Mr. Daoud may use the entrapment defense as mitigation at sentencing. *Id.,* p. 2.

### JUNE 22, 2023, SENTENCING HEARING, Vol. I

Special Agent Jeffrey Parsons was called as the government's first witness. He testified as a counterterrorism expert with training in Arabic. *Id.* p. 12. The agent reviewed on-line postings by Adel Daoud, his texts, emails, and videos that Mr. Daoud watched. Sen. Tr. Vol. I, p. 13.

7

The FBI's investigation began in May 2012, by introducing OCEs [on-line covert employees] to Mr. Daoud to assess the threat that he posed, based on the nature of his internet activity. Sen. Tr., Vol. I, p. 14.

One of Adel's posts claimed that he wanted to oppose oppression - his definition of terrorist: " Hahahaha, wallah, I say I want to be a terrorist, and I meant to cause terror to oppression. Oh, my God, I didn't know that's what this song meant. These nasheeds are already in my heart. Thanks for the translation, Subhan Allah Azeem." *Id.,* p. 44. Adel also clarifies that when he talks about killing and dying for Allah, he is not talking about killing innocent people. *Id.,* p. 45.

Adel had a broader understanding of "jihad" than violent fighting: "Jihad is referred to in the Quran and Sunnah as fighting. So when I say jihad or most of the time of Quran and Sunnah say jihad, it means fighting. But you have to fight the disbelievers with your hearts, tongues, and swords. Fight them by your words and by your swords and, hahaha, yes, he got the Hadith right, fight them with your wealth, tongues, and swords (selves)." Sen. Tr., Vol I, p. 60.

The agent pointed to another of Adel's messages to an online correspondent:

> I do research myself. I don't blindly follow a sheikh, and if I do, prove it because I don't. I study Quran and Sunnah and then I study from the scholars. I don't blindly follow anyone. *I hear both sides and decide what's right.* Innocent civilians? May I remind you that the government also does false flag attacks and blames it on the Mujahideen. But you would rather believe the Kufaar. Bring be the Hadith if you are truthful." [emphasis added]

*Id.,* p. 72. Adel also urged his OCE correspondent not to blindly follow the readings he sends, but "read and listen and look into the matter yourself." *Id.,* p. 85. He continued to talk about the value of knowledge and repeatedly urged the OCE to think for himself. *Id.,* p. 91-92.

On May 14, 2012, the FBI introduced an OCE to Adel through one of Adel's postings on Yahoo Answers. The first OCE pretended to be a younger Arab living in Australia. The second OCE pretended to be an older man living in the Arabian Peninsula and having a "more scholarly" understanding of religion. *Id.,* p. 76. On May 21, 2012, OCE-1 mentions an older cousin as a prelude to introducing Adel to an undercover officer.

On June 1, 2012, the OCE-1 changed tactics, stopped talking about knowledge and focused on "hijrah"- stepping up from thought to action,

and introduced the ideas of urgency in action, coming to America, and approval of learning how to make homemade bombs. *Id.,* p. 108.  In response, Adel told him "[r]eading is good, knowledge is power, keep yourself in the books." *Id.,* p. 110.  Adel told OCE-1 that "[r]ight now I'm trying to get into Madinah University, Insha' allah. Make dua I go there." *Id.,* p. 111.

Later in June 2012, Adel questioned the videos and lectures that encouraged attacks on America or civilians. Sen. Tr., Vol. I, p. 114.  Adel also expressed concern that he was not fit for fighting and had no experience with firearms. *Id.,* p. 116. He was not ready to plan action and was planning to enroll in university, instead.

The OCE-1 encouraged Adel to action, telling Adel that "I believe there is no better time to do jihad more than in this time. As you know our ummah is suffering everywhere, even in Europe and America. And that's why Brother Mujahid and Nidal Hasan was fed up with the hypocrisy of America. How come you don't know anything about guns? Don't you have a gun? I heard that in America people can buy any kind of weapons including tanks. Don't they have training and shooting places in America?" *Id.,* pp. 126-127.

In response Adel said: " I did discuss some plans, both very trusted brothers. I don't have a gun. Man, my parents would already freak out if they saw me buy a gun and using it. Maybe when I'm not living with my parents, I will get my own gun. They do have shooting ranges, but lol, I never saw anyone buy a tank before. Plus I just turned 18 at December.*" Id.,* p. 129.

In a later message Adel reiterated his love for reading and his worries about being unfit for fighting: " ". . .  The longer a good book or magazine is the better. That means more content, you know. Man, you help me. I cannot run to save my life. I got asthma and flat feet on top of not being fit. I'm, Insha'Allah, get a treadmill. Go with my friend to a gym or something and run. Like I ain't fat but I still cannot run. I need to learn how to shoot too. Hahaha, if I knew you in person, I would have probably asked you to help me. Hahaha. Smiley face." Sen. Tr., Vol. I, pp. 131-132.

Adel was still asking questions and reading by the end of June 2012: "LOL, no, I haven't been running and shooting yet. I have a procrastination problem. However, I did download more books, a few of

them for military skills and guerrilla warfare. . . .I also downloaded books that have to do with jihad and so forth." Sen. Tr., Vol. I, p. 152.

### JUNE 23, 2023, SENTENCING HEARING, Vol. II

Adel Daoud cross-examined Agent Parsons on the second day of the sentencing hearing. Adel highlighted the concept of defensive jihad, in response to Muslims being attacked by others and that there is a duty of aid among Muslims, irrespective of permissions given by parents or other authority figures. Sen. Tr., Vol. II, 235-238. Adel told the Court, "The other point I was making at this moment is that a lot of the stuff that I posted supports multiple ways of supporting the same issues. . ." *Id.,* p. 248.

The government next called "Mudafar," the undercover FBI agent with whom Adel met in person. Mudafar posed as a mujahideen fighter who had fought in Afghanistan and believed in "jihad" as the FBI meant it - violent action. Sen. Tr., Vol. II, p. 264.

Mr. Daoud characterized himself, saying "we are terrorists in a good way." *Id.,* p. 269. During Adel's first meeting with Mudafar, Adel told Mudafar that Adel wanted to go to Madinah University for school. *Id.,* p. 277.

Mudafar testified that it was Daoud who first brought up the idea of attacking people in the United States, *Id.,* p. 278, however, Adel's first "idea" was using a flying car to make attacks. Mudafar urged him to think of other ideas and to write them down. *Id.,* p. 279.

Mudafar arrived in Chicago during Ramadan.  Adel told Mudafar that he was going to Madinah University after Ramadan. Mudafar told Adel that he wanted to do an attack before Adel left for Madinah. Sen. Tr., Vol. II, p. 282.

During the next in-person meeting, Mudafar claimed that Adel came up with attack targets. *Id.,* p. 282. The arrival of Mudafar spurred Adel to action: " "Ameen, Hamdallah, Masha 'Allah, like Allah and Deen, you solve my problems, like I wanted to go overseas, but I wanted to do charity work here so badly too. I wanted to do both, but I didn't know how. Hamidullah, you brought us together -- who brought us together. Is Monday good for you or you want to go an . . . " *Id.,* p. 301.

Adel continued to express his reservations to Mudafar: " "Okay. Because I need someone to tell me why the Americans are okay to donate to. The sheikh gave me some arguments. So I sat, I thought about it, and I came up with good comebacks. But to hear from a sheikh

similar to him or better would make me feel better." Instead of redirecting Adel, Mudafar told Adel to keep their "plan" a secret.

On September 14, 2012, Mudafar met with Adel, a video surveillance team was on site, and Adel took the car to the parking place as directed and pushed the detonation button two times, at which time he was arrested. Sen. Tr., Vol. II, p. 357.

On cross-examination, Adel emphasized his reluctance to do anything outside of his limited capabilities. *Id.,* p. 368.  He talked about his limited capabilities, going to Madinah, his parents being upset, and his desire not to do anything that would result in him getting caught and not being able to go to Madinah. *Id.* When the hearing ended, the Court set August dates for continuing the sentencing.

Adel Daoud filed his own sentencing memorandum on July 18, 2023. R. 469.  The typewritten document contained 217 pages and was styled "Daoud's Sentencing Memorandum with Attached Affidavit/Objections to the Government's Factual Basis for Defendant's Plea of Guilty Pursuant to North Carolina v. Alford."   In the filing, Adel emphasized that he had no resources, connections, means, or co-conspirators with whom to devise a plot, much less carry it out.  All the

14

critical aspects of the make-believe plan were directed by the UCEs rather than initiated by Adel Daoud. R. 469, p. 187-204.

The Court denied Mr. Daoud's renewed Motion to Withdraw Guilty Plea. R. 470.

### *AUGUST 1, 2023, SENTENCING HEARING, Vol. III*

Adel Daoud reprised his cross-examination of Mudafar and emphasized that he told Mudafar, " "I can't really do anything myself because I don't have any, like, training or anything." Sen. Tr., Vol. III, p. 397. To demonstrate that the "bombing" was not something Adel contemplated in the absence of Mudafar's involvement in his life, he highlighted a part of their conversation in which Mudafar asked what Adel would do to help jihad if Mudafar were not there. Adel replied that "I'd just prepare to go overseas." *Id.* This question and answer were repeated at least three times in August 2012. Adel asked Mudafar "As far as physical against the kuffar, things like that, I can't. Isn't that what I said?" To which, Mudafar agreed. *Id.,* p. 403.

Further conversation led Adel to say, " "Because I wanna do things overseas. And a good desire that I had, but I don't know if the capacity or anything to do it, so I don't have anything up here. I don't

have anything like -- I'm not like -- I'm not like a genius. I don't know how to make a bomb. I don't know how to list -- how to do, like, basic things, you know. All I have is ideas and crazy fantasies. That's all I have." *Id.,* p. 407.

Mudafar admitted that Adel had no specific plan, but the FBI believed he had intentions of conducting "some attack" in the United States. Sen. Tr., Vol. III, p. 408; pp. 512-513..

Adel demonstrated that he was following the lead of Mudafar and doing what Mudafar instructed him to do.  Adel pointed out that Mudafar was the one who introduced the idea of conducting an attack by saying, "And, really, our goal is to do something in Chicago or L.A." *Id.,* p.447. In fact, in Mudafar's original meeting with Adel he tells Adel that he came back from Afghanistan "[b]ecause I'm going to tell you, you know, one of the things we like to do is we like to do something in America." *Id.,* p. 463.  When Adel talked about using "flying cars" to commit attacks, it was Mudafar that brought the conversation back to reality by talking about trying an attack with a "regular car." *Id.,* p. 467-468.

### *AUGUST 2, 2023, SENTENCING HEARING, Vol. IV*

The first witness called on August 2, 2023, was OCE-1, Salah al-Hani for the purposes of the hearing. Sen. Tr., Vol. IV, p. 563.  Salah's persona was a 17-year-old from Australia whose job it was to assess whether Adel Daoud presented a "threat to public safety.". *Id.* Salah began targeting Adel because he posted on Yahoo Answers about a jihad hymn [nasheed in Arabic], offered it to others, and asked for more jihadi hymns. Sen. Tr., Vol. IV, p. 564-565.

Adel shared issues of Inspire magazine with Salah and they read and shared articles with each other. Sen. Tr. Vol. IV, p. 566.  Adel provided the links for about nine issues. *Id.* at 567.  A May 22, 2012, message from Adel to Salah stated: "Hahaha. You like the magazine, huh?. . . I think you should read it first before thinking about trying any instructions, and you can tell that that's what they want you to do. I'm going to Insha'Allah read all of them. Then if I decide to try any of those instructions, I'll go back to it." Id. at 569.


Adel showed another message in which he talked about being a procrastinator and not keeping up with Salah's reading.  He also

17

encouraged Salah to do his own research and to correct Adel if he said anything that was not in keeping with the Deen, or religious teachings: Sen. Tr. IV, pp. 571-672.

Adel emphasized the importance of educating the mujahideen in Islam and questioned Salah about whether he remembered that Adel's plan was to go to Madinah University to study, which he did. Sen. Tr. Vol. IV, p. 580.

Adel repeatedly pointed out that he was into studying and reading books. A point with which Salah agreed. *Id.* at 581. Salah corresponded with Adel from May 2012 until September 2012. *Id.* at 585-586.

Well into his correspondence with OCE-1, Adel was still reading, thinking, and talking. He had no concrete plan other than continuing his studies at Madinah University. Adel further expressed his limitations as far as taking any concrete action: specifically, living with his parents and brother. Sen. Tr. Vol. IV, p. 591. Salah was the one who introduced the possibility of acting, by introducing a "cousin" who lived in New York, on his own, and was able to act.

Adel expressed reluctance to engage in "operations":

18

Operations, however, take time. I am still coming up with ideas on what to do. So when I know for sure what I want done and what to do, et cetera, I'll let you know. **But I'm starting to back away from operations here -- it's worrying me a lot -- and just go overseas. If that happens, then we can work, Insha'Allah, on going there, Insha'Allah**. [emphasis added]

*Id.* at 592.

Salah admitted that at the time of the messages - June 30, 2012,

Adel had no plans to do anything other than study. *Id.* at 596-597.

Salah's involvement with Adel ended once Salah introduced Adel to tthe

undercover agent. *Id.* at 599.

Salah introduced the idea that he and a cousin would go to one of

the "fronts" of war overseas, again turning the conversation to action.

*Id.* at 601-602. As Salah was talking about action, Adel again revealed

his uncertainty about what to do:

I'm either making my one group, or I'm going overseas, Insha'Allah. Pray that I do not back out of this. But I'm still confused on the exact reason you want to go to New York. If it's cuz of what I said about the group, haha.

*Id.* at 603.

"Yeah, of course, Insha'Allah, we'll see each other. I
think my Etika thing was the most realistic way. I want to
go overseas in Madinah to learn the Deen, Insha'Allah, after
Ramadan. So just telling, you know. I have a lot of ideas.
I try to think of ideas and then try to see if it logically makes sense and
if it's rational and possible, et cetera. I can discuss with you my ideas as

I have only ideas for inside this country. But any ideas you have, I'm open."

Q. So, again, this is another reference of me going to Madinah University in Saudi Arabia?

A. Yes.

Sen. Tr. Vol. IV, p. 603-604.

Adel emphasized that he and Salah had been chatting since May and by July 2012, Adel still had no plans, *Id.* at 607, 620, and referred to his inexperience and longing for guidance. Sen. Tr. Vol. IV, p. 612

Adel next examined OCE-2, Lyad Hasan. Sen. Tr. Vol. IV, p. 635. Lyad's assigned goals were to see what Adel's intentions were and whether he really wanted to commit acts of violence. *Id.* at 636. Lyad described part of his job as building a bond with Adel. *Id.* at 650. Adel asked Hasad about what he did in Syria in 2012 - around the time of the Arab Spring. Hasad claimed he was attacking and killing Syrians. *Id.* at 655. Adel talked to him about going overseas and needing a sheik for advice. *Id.* at 657-658. Adel talked about fighting for Islam as if it were a dream or fantasy - not something he was planning to do. *Id.* at 660.

Adel elicited from Lyad the same reasons why he wasn't involved in fighting, including his family, his age, and his lack of preparedness:

Sen. Tr. Vol. IV, p. 662. Lyad, too, admitted that Adel wanted to travel overseas and study - not that he was planning to commit violent acts in the United States. Sen. Tr. Vol. IV, p. 682.

Bomb tech, Michael Holt, testified that the FBI ordered the construction of a car bomb on August 13 or 14, 2012. *Id.* at 692. Adel did not take any part in the assembly of the bomb. *Id.* at 692. The car bomb was constructed on August 22, 2012. *Id.* at 693. The bomb builder did not know whether Adel connected any wires on September 13 or 14, 2012. *Id.* at 694.

Raymundo Najera was the last to testify on August 2, 2023. Najera was one of the Agents who debriefed the undercover agent and testified about the FBI's three original goals: (1) did Adel have a plan?; (2) does Daoud have a close group of co-conspirators? and (3) to stop Daoud from recruiting younger individuals. *Id.* at 704-705. Najera claimed that Daoud came up with the plan. *Id.*

Najera discovered that Adel had no co-conspirators and that it was just Adel that who wanted to take part in a plan to do something. *Id.* Najera claimed that he did not know whether Adel had a plan before introducing him to the undercover agent. *Id.* at 707. Adel had an "idea

of a plan" but no plan.  The Court intervened with this witness to

admonish his about his evasiveness in failing to answer Adel's

questions. Sen. Tr. Vol. IV, p. 708.

### *AUGUST 3, 2023, SENTENCING HEARING, Vol. V*

Adel called his father, Mohamad Daoud, to testify for him. *Id.* at

720. Mr. Daoud testified that Adel had been out of the house for 10

years, 10 months and 17 days - all time spent in jail. *Id.*  Adel asked his

father about their trip to Mecca to do the Hajj. *Id.* at 721. Adel's father

talked about buying books for Adel and that Adel was a bookworm.  He

liked to play video games and watch cartoons.  At one time he had a pet

lizard to care for. *Id.*

Before Adel was locked up, he had been accepted into the religious

studies program at Madinah University, and his father was helping him

to go there. Sen. Tr. Vol. V, p. 726.  Adel's father testified that Adel had

wanted to be a teacher and a sheik.  *Id.* at 728. Adel was beloved by his

siblings and by the people at the Masjid. Although Adel learned how to

drive, he only knew one route to the Islamic Foundation School and

home -- his father had to help him get home if there was a detour. *Id.* at

730.  His father described Adel as the light of his home and his favorite

child. Sen. Tr. Vol. V, p. 732-733.

Adel played a video of people supporting him, including his

teacher from the Islamic Foundation School, his counselor, and a sheik

whom he met at IFS. *Id.*

Mona Daoud, Adel's mother, addressed the Court to say that Adel

was not the person he was being painted to be:

> I want everyone to see that he is not the person that they picture him to
> be. He's not a dangerous person. I did not raise a terrorist. I'm not
> proud of it, but I'm not -- I wasn't -- I should say wasn't that religious
> at the time when I raised my kids. So when I came to this country, I
> came because I wanted a country of freedom which we don't have a lot
> in our countries.

Sen. Tr. Vol. V, pp. 744-746. Adel's mother then recounted that her

oldest son was diagnosed with schizophrenia, and this caused many

problems in the home.  Adel wanted to help his family and went in the

opposite direction of his brother.  She also addressed the impact on Adel

of being between two cultures, Adel's poor physical health, his mental

health issues, the delayed age at which he learned to speak, and his

history of temporary obsessions, including his obsession with "the

resistance." Sen. Tr. Vol. V, pp. 754-755.

After Adel's mother testified, the Court expressed its concerns

about Mr. Daoud's mental health:

So, item two is, I -- in my review of the docket when
I got this case or when I inherited this case and since, I saw
that there were various psychological or psychiatric
evaluations that were done for different purposes. My sense
was they were largely done when there was some question raised
by somebody regarding competency, and I think I saw that
Dr. Goldstein from Isaac Ray did an evaluation and then there
were some other people. I don't know if -- I haven't been
able to figure out where to find any of that stuff, number
one. Number two, if anybody has a problem with me looking at
it.

So can people help me out on that? *Id.* at 758-759.

The sentencing was continued to August 8, 2023.

### *AUGUST 8, 2023, SENTENCING HEARING, Vol. VI*

The first witness on August 8, 2023, was William Paschal, Adel's

cellmate at the Jerome Combs Detention Center, in Kankakee. Sen. Tr.

Vol. VI, p. 770-771. On November 23, 2012, the two were moved into a

recorded cell.

Paschal claimed that Adel solicited him to murder the undercover

agent in his case, in return for $20,000. Paschal told his handler "I got

him to say what I needed him to say" and "I maneuvered, man," "I

24

maneuvered like a motherfucker," and the handler said "He [Adel] doesn't really understand the game."

Adel disagreed that he ever made an offer to his cellmate. Sen. Tr. Vol. VI, p. 775.

Adel showed Paschal some of Paschal's own handwritten notes, including one that said: " *"Can't pay me to kill Mudafar but can give me a gift after it's done. Promises me a gift, family owns home in Egypt, can go there." Id.* 777. Adel went through a calculation of the number of hours he and Paschal spent together as opposed to the approximately 32 hours of recording to show that Paschal's account of what happened was not reliable.

Agent Hartman, the case agent, testified after Paschal. *Id.* at 784. Adel again went through the three goals of the investigation with Agent Hartman: to see whether Adel had an actual plan, whether he was part of a group and had coconspirators, and to stop Adel from recruiting young people to his cause. *Id.* at 786.

Adel asked Hartman if they found out that he had a plan, to which Hartman responded, "I don't know." *Id.* at 787 Adel reviewed all the

25

emails with him that involved Adel's application to study at Madinah University.  Sen. Tr. Vol. VI, pp. 802-814.

Adel questioned Hartman about the final arrest plan that was dated September 7, 2012. *Id.* at 816.

Adel finished his examination of Agent Hartman by asking about the FBI's circulation of its use of force policy and by asking Agent Hartman if he had tried to kill Adel.  Sen. Tr. Vol. VI, p. 833.

Adel called his former cellmate, Eduardo Ramirez, to testify as a character witness.  Sen. Tr. Vol. VI, p. 835.

Mustafa Elemam, another character witness, met Adel Daoud in Saudi Arabia when Adel accompanied his own father on the Hajj. Sen. Tr. Vol. VI, p. 840.  Mr. Elemam traveled from Texas to participate in Adel's sentencing hearing and testified that Adel was devoted, selfless and helpful to the older men who were on the Hajj together." *Id.* at 842.

The District Court returned to the issue of mental health at the close of witness testimony. The Court stated, in part:

Anyhow, there was at one point in time, multiple points in time, diagnoses of certain mental illnesses. And I got a decent amount of experience with this kind of thing from 24 and a half years as a judge and, you know, decent amount as a practicing lawyer and then other things.

Mental illnesses don't just appear and reappear. They can be controlled
with medication, I mean, depending on what they are or not. I guess I'm
left with the question of whether it was ever considered by the defense
either before or now whether it would -- of whether to have Mr. Daoud
evaluated just in terms of a mitigation standpoint just to assess or
whether somebody could assess whether and to what extent any mental
condition that he had might have contributed to one or more of the
offenses.

Sen. Tr. Vol. VI, p. 846.

     The District Court asked the parties:

The question I'm asking, and I don't want anything
other than an answer to this question, the question I'm asking
is: Was there ever consideration given to having somebody
examine Mr. Daoud and render an opinion regarding whether and
to what extent he had any mental condition that might have
contributed to his commission of the offenses?

Sen. Tr. Vol. VI, p. 847.

     When the Court reconvened in the afternoon, the Judge decided to

continue the sentencing to have an evaluation undertaken:

So, I'll tell you. Particularly given the situation that Mr. Daoud is *pro
se*, I guess I am -- and I don't say that in any kind of pejorative sense, I
mean, this just seems to me that something -- it seemed to me as
something that a reasonably competent defense counsel would at
least consider in a situation like this. I wouldn't say that for any -- every
case across the entire spectrum of criminal cases, but it's a thing that
ought -- that a person would consider and it may be considered and
rejected. . . .
-- here's what I think. I would like to do this. It just seems to me that
it's important information. I mean, you know, the considerations under
Section 3553(a) of Title 18 that a judge has to consider in imposing a
sentence include, number one, the nature and circumstances of the

27

offense. Obviously, there's been a lot of discussion about that. The history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense to promote respect for the law and provide just punishment, I'm paraphrasing; to afford adequate deterrence to protect the public from further crimes; to provide the defendant with necessary services or treatment; and to provide-- avoid unwarranted sentence disparities, and a couple of other things. And the type of thing I'm talking about here is at least potentially relevant to at least two or three, maybe more than two or three of those various bullet points in Section 3553(a). . . .

Sen. Tr. Vol. VI, pp. 850-853.

### *SEPTEMBER MOTION TO WITHDRAW PLEA*

On September 12, 2023, Adel Daoud filed another motion seeking to invalidate his *Alford* plea. R. 484. In his handwritten motion, he said, "By the grace of the Creator, I proved I am innocent of the main accusations against me, and that should supercede [sic] any plea." R. 484, p. 7.  Adel Daoud also filed another Affidavit, attesting to the reasons he was afraid and followed his attorney's recommendation to enter the *Alford* plea. R. 485.

In quick succession, Adel Daoud filed a Motion to Dismiss, R. 489; Motion to Compel, R. 490; and Motion to Suppress, R. 491.  The Court denied these motions, in part, and ordered the Government to file a response to the Motion to Compel. R. 494. The Court denied all three of the Motions. R. 500.

Mr. Daoud's standby counsel contemporaneously filed a Motion for mental health exam and to appoint an expert. R. 482.  The Court granted this motion on September 14, 2023. R. 483.

On September 25, 2023, the government filed a Motion to have Mr. Daoud's mental health evaluated by their own expert. R. 492.  The Court took this Motion under advisement. R. 493. The Motion was denied as moot, prior to the final sentencing hearing. R. 551.

In early October, Mr. Daoud filed a Motion to Suppress, R. 497; Motion to Dismiss for Framery, R. 499; Motion for Judicial Notice, R. 501; and Motion to Compel, R. 502.  On October 20, 2023, the Court ordered the Government to respond to the Motion to Compel and denied the Motion for Judicial Notice without prejudice. R. 503.

On December 5, 2023, Adel Daoud filed a Supplemental Sentencing Memorandum, in which he included much of the recorded conversation between him and the cooperator that was urging him to solicit the murder of an FBI agent. R. 513.

On January 10, 2024, Adel Daoud continued his campaign to make the Court address the injustices he was suffering.  He filed a Motion to Compel, Impeach, and Dismiss. R. 515.  In this Motion, Adel reported

more of the conversations that his "cellie" had with his wife in which he appeared to admit to having murdered his girlfriend and threatened his wife with death because he doesn't want to divorce. He also talked about hitting his wife with a stick and using a box cutter to cut up her face.  This was the brutal and frightening person the FBI placed in the cell with Adel Daoud. R. 517.

On January 10, 2024, Adel Daoud filed another Affidavit in which he attested to issues with the *Alford* plea and emphasized his lack of intent to participate in the "car bomb" detonation, suspecting that the UCE was, in fact, a spy. R. 516.

The Court denied Adel's motion to dismiss the charges against him and his motion to withdraw his *Alford* plea, finding that even if the UCE and CHS had lied in their testimony this was not a reason either to dismiss the charges, or to withdraw his plea. R. 530. The Court reminded Mr. Daoud that he would be better off with representation by counsel.

Through his standby counsel, Mr. Daoud filed a Supplement to his Sentencing Memorandum that included 84 Exhibits, 11 letters of support, and one video from a former teacher. R. 565.

### *JULY 19, 2024, SENTENCING HEARING, Vol. VII*

The Court began by adopting the guideline range that was calculated for the original sentencing, since it was not challenged on appeal and was not challenged by Mr. Daoud after the remand. That guideline provided a base offense level of 43 and a criminal history category VI, resulting in a recommended range of life imprisonment. Sen. Tr. Vol. VII, p. 7.

Adel Daoud addressed the Court. Adel's emphasis was on his lack of a plan to engage in terrorism and the FBI's misrepresentations to the Court on that subject. Sen. Tr. Vol. VII, p. 29-38. With respect to the solicitation for murder case, Adel pointed out the falsehoods told by the cooperating source who, in fact, pressured Adel into soliciting the murder of the agent. Sen. Tr. Vol. VII, p. 38-40. Regarding the attack on his fellow inmate, Mr. Daoud highlighted his witnesses' unwillingness or inability to remember what they told him about what really happened. Sen. Tr. Vol. VII, p. 40-41.

Adel Daoud repeated his desire for a trial: " I wished from the time I was arrested -- my wish from the time I was arrested was to go to trial, prove my innocence, and go home. My lawyer falsely promised me

31

for almost seven years for this day, upon doing so, I would probably get 17 years, but if I didn't, Judge Coleman would probably retire first and another judge would take my case and treat me like the others, the Muslims who they gave 30 years in similar stings. He said, I don't want to see you get hurt. I was scared, but I still refused to sign because it's against my religion to sign false confessions. This is why I pled no contest. There's no way I can accept guilt for something I didn't do." Sen. Tr. Vol. VII, p. 42. He continued, saying: "This now seven-day sentencing hearing was the closest I ever got to fulfill my wish of going to trial." *Id.,* p. 43-44.

The Court stated that it was unusual for the government to recommend a below the sentencing guidelines 40-year sentence. *Id.,* p. 50.

> After discussing the serious nature of the crimes, the Court said:
>
> I do think it's important to note that the crimes, at least the first one and arguably the second, were not crimes that Mr. Daoud did or even could have done on his own. There's no contention, and I don't think could be a plausible contention that he had the capability of making a car bomb or anything like it, like one.

*Id.,* p. 54.

32

Turning to the first Court of Appeals' opinion, the District Court cited the reasoning behind finding the 16-year sentence substantively unreasonable, observing that the Court of Appeals disagreed with the weight Judge Coleman gave to her assessment of Mr. Daoud. Sen. Tr. Vol. VII, p. 61. The Court cited Mr. Daoud's youth at the time of the offense - being a teen and a loner, susceptible to the influence of others, who bonded with the undercover agent, his lack of criminal history and sophistication, all of which are appropriate factors under Title 18, United States Code, Section 3553(a). The Court also recognized that there were psychological or psychiatric factors at play, based on the prior examinations to which the Court had access. The Court thought that there may be more going on with Mr. Daoud but pointed out that Mr. Daoud did not offer the evaluation that was done, so the Court could not consider that. *Id.,* p. 64.

The Court considered the government's presentation that similar cases ranged upward from 23 years, found that 40 years was too harsh - that Mr. Daoud would age out of recidivism before that time, and imposed a total sentence of 27 years [324 months] with a term of

lifetime supervised release. *Id.,* p. 66. The Court also imposed the mandatory special assessment of $925 and no fine or restitution.

Specifically, in case number 12 CR 723, the Court imposed a sentence of 324 months on Count 1 and 240 months on Count 2; in case number 13 CR 703, the Court imposed sentences of 120 months on Counts 1 and 2, and 324 months on Count 3; in case number 15 CR 487, the Court imposed sentences of 240 months on Count 1, 120 months on Counts 2 and 3, 60 months on Count 4, and 12 months on Count 5, all counts and sentences to be served concurrently. Judgment was entered on July 30, 2024. R. 573. The first Amended Judgment was entered on August 5, 2024. R. 575. The Second Amended Judgment was entered on August 8, 2024. R. 584.

A timely notice of appeal was filed on August 6, 2024. R. 576, 250, and 261. This appeal follows.

## SUMMARY OF THE ARGUMENT

The District Court abused its discretion in denying Mr. Daoud's motions to withdraw his *Alford* plea, in violation of Mr. Daoud's Fifth and Sixth Amendment rights. Mr. Daoud had "fair and just reasons" to withdraw his plea.

The District Court erred in permitting Mr. Daoud to represent himself without making the requisite findings about Mr. Daoud's ability to do so, in keeping with the United States Supreme Court's holding in *Faretta v. California*, particularly considering Mr. Daoud's known mental health history.

The District Court allowed Mr. Daoud to represent himself, which prejudiced Adel Daoud at sentencing, where Mr. Daoud treated the sentencing hearing as if it were a trial and refused to submit mitigating mental health and other evidence on his own behalf. This resulted in a substantively unreasonable sentence.

## ARGUMENT

I.    The District Court erred in denying Adel Daoud's Motion to Withdraw his *Alford* Plea.

    A.    Standard of Review

Under Fed. R. Crim. P. 32(d), a court may permit withdrawal of the plea prior to sentencing upon a showing by the defendant of any fair and just reason. The standards for granting a rule 32(d) motion prior to sentencing are liberal. The decision is within the sound discretion of the trial court and will not be reversed except upon an abuse of discretion. *United States v. Ellison*, 798 F.2d 1102, 1103 (1986).

B.     The District Court abused its discretion in holding Adel
       Daoud to his *Alford* plea, in violation of his Fifth and Sixth
       Amendment rights.

 The Supreme Court has found that the knowing and voluntary
nature of the decision to plead was the determining factor in the
validity of plea, stating that "[a]s one state court observed nearly a
century ago, "reasons other than the fact that he is guilty may induce a
defendant to so plead, . . . [and] he must be permitted to judge for
himself in this respect [citation omitted]." *North Carolina v. Alford*, 400
U.S. 25, 33 (1970).

In Adel Daoud's case, he was persuaded to accept the sentence
imposed by the first District Court, who knew the case well, was
reputed to be careful, thorough, fair and compassionate in a practical
sense in the imposition of sentences in criminal cases.  The calculation
underlying Adel Daoud's initial entry into an *Alford* plea, which he did
over the government's objection, was stripped away by the Court of
Appeals on remand, leading Adel to move the District Court to
withdraw his plea.

After the Court of Appeals' decision, the original *Alford* plea was
no longer voluntary.

It is beyond dispute that a guilty plea must be both knowing and
voluntary. The standard was and remains whether the plea represents
a voluntary and intelligent choice among the alternative courses of
action open to the defendant. That is so because a guilty plea
constitutes a waiver of three constitutional rights: the right to a jury
trial, the right to confront one's accusers, and the privilege against self-
incrimination.

*Parke v. Raley*, 506 U.S. 20, 22 (1992).

Withdrawal of the defendant's *Alford* plea after the recission of his

basis for entering it would save the plea from violating Adel Daoud's

right to Due Process, his Sixth Amendment right to confront his

accusers, and his right to a jury trial.  As the Supreme Court has long

held:

Our cases make absolutely clear that the choice to plead guilty must be
the defendant's: it is *he* who must be informed of the consequences of
his plea and what it is that he waives when he
pleads, *Boykin* v. *Alabama,* 395 U.S. 238 (1969); and it is on his
admission that he is in fact guilty that his conviction will rest.

*Henderson v. Morgan*, 426 U.S. 637, 650 (1976).

This Circuit has followed the holdings in *Alford*. "In order for

there to be a valid *Alford* plea, the Court must establish that the

defendant has a full understanding of the elements of his alleged crime

and, with that knowledge, has made a knowing and voluntary decision

to plead guilty in spite of his asserted innocence to avoid the possibility

of more severe penalties at trial." *United States v. Ivory,* 11 F.3d 1411, 1420 (7th Cir. 1993).

In view of one of the purposes of an *Alford* plea - to avoid more severe penalties at trial -- the District Court perversely required Adel Daoud to adhere to his *Alford* plea when, after receiving the benefit of his once-rational choice, a decision of the Court of Appeals required that a more severe penalty be imposed upon him, effectively depriving him of the benefit and purpose of his original decision to forego trial.

This Circuit's decision in *United States v. Cook,* 668 F.2d 317 (7th Cir. 1982), is instructive. The defendant entered a negotiated *Alford* plea with the government, in which the government promised to present no aggravating factors at sentencing. The government provided its file to the probation officer who presented aggravating factors from the government's file at sentencing. Cook then moved to withdraw his *Alford* plea on the grounds that the government breached the agreement. This Court agreed and remanded Cook's case to the District Court to allow Mr. Cook to withdraw and renegotiate his plea. In Adel Daoud's case, it was the decision of this Court and not the government

38

that disrupted the plea by requiring a stiffer sentence than the one he

had received in return for the *Alford* plea.

    C.    The District Court erred in analyzing Adel Daoud's motion to withdraw an *Alford* plea.

"A defendant seeking to withdraw his guilty plea must show a

"fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). The District Court

also recognized that in considering a request to withdraw a guilty plea,

a court is entitled to hold a defendant to the representations he made

during the guilty plea colloquy. *See, e.g., United States v. Rinaldi*, 461

F.3d 922, 927 (7th Cir. 2006)." *United States v. Daoud*, 2024 U.S. Dist.

LEXIS 42104, *6.  In the case of Adel Daoud's *Alford* plea he did not

make any admissions of guilt and specifically entered the plea while

maintaining his innocence of the charges.

    1.    The first Motion to Withdraw *Alford* Plea should have been granted.

After remand to the District Court, Adel Daoud, through counsel,

filed a Motion to Withdraw *Alford* Plea. R. 417. The motion recounted

the reasons for entering the *Alford* plea. Although he had legitimate

defenses at trial, including an entrapment defense to the FBI's creation

of a "car bomb" and a mental health defense to the assault with intent

to commit murder charge, his counsel at that time expressed concern for

Adel's mental stability through the course of a three-week trial:

> While counsel for Defendant will readily attest that they have observed, on balance, a marked improvement in Defendant's condition after prescription of medication, counsel—as well as Defendant's family—are very concerned about the impact of stress and rigor of a three or more week trial that will involve amongst other things, hours of recordings of Defendant's own statements; extended evidence of how own writings; numerous witnesses questioning Defendant's statements, including his religious beliefs; and possibly even his own testimony. In short, while 4 undersigned counsel are not concerned with competency, they can represent to the Court in good faith that they are legitimately concerned that these proceedings could adversely affect the medical progress Defendant has made since his treatment at FMC Butner.

R. 417, p. 3-4.

The government originally objected to the *Alford* plea, calling it

"an attack on our system of justice." *Id.* at 4, citing R. 297, p. 8. Counsel

relied, in part, on the government's objection to the entry of the *Alford*

plea on public interest grounds, in supporting withdrawal of the plea.

After remand, prior counsel's extreme concern for Adel Daoud's

mental health and stability was no longer at issue, since the conditions

which contributed to his instability --lack of competency, lack of

medication, long periods of segregation and isolation, his inability to

receive family visits or practice his religion --had been remedied and

were no longer such that trial would not be a viable option for him.

40

Nonetheless, the District Court rejected the Motion, finding that nothing had changed to provide a "fair and just reason" for allowing Adel Daoud to withdraw his *Alford* plea. R. 592 at 8. The Court found that the evidence had not changed, a finding that was inaccurate as the Court later determined. The District Court rejected the change in judge, attorney, and rejection of the original sentence as changes that warranted a withdrawal of the plea, without relying on any precedent to justify the rejection of these changes. R. 592, pp. 8-9.

Instead, the District Court relied on this Court's decisions in *United States v. Schilling,* 142 F.3d 388 (7th Cir. 1998) and *United States v. Barr,* 960 F.3d 906 (7th Cir. 2020), neither of which addressed the precise issues in this case. R. 592, p. 5. Both *Schilling* and *Barr* addressed motions to withdraw negotiated and written guilty pleas, the factual bases for which were admitted by the defendants at the time of their pleas.

In *Schilling,* the defendants argued that the government had breached the plea agreement by presenting evidence at sentencing that the defendants were responsible for a greater amount of excise tax loss than that which was contained in the plea agreement. This Court

41

affirmed the District Court's finding that no breach occurred because the government had specifically reserved the right to inform the Court of the totality of the defendants' conduct and the indictment included a greater loss amount than was included in the plea.

Defendant Barr did not preserve a claim of actual or legal innocence as Adel Daoud has done. Instead, Barr claimed ineffective assistance of counsel in preparing him to enter the plea and his own "wrongly held belief" that the government would have to prove his amount of loss beyond a reasonable doubt at sentencing. *Barr* does not inform an analysis of Mr. Daoud's case, where Adel maintained his innocence, but under the advice of his first counsel, traded his innocence for a prison sentence that mitigated the potential harm to him if he proceeded to trial. Post-remand, the harm he sought to prevent was realized due to this Court's decision, remanding the case for imposition of a more severe sentence.

In *United States v. Graf,* 827 F.3d 581 (7th Cir. 2016), this Court enumerated three bases for withdrawing a plea: legal innocence, actual innocence, and that the plea was not knowing and voluntary, Mr. Daoud's claim centered on legal innocence and the involuntariness of

42

persisting in an *Alford* plea when the circumstances under which it was to be enforced had substantially changed.

The District Court, relying on this Court's decisions in *Ellison* and *Stewart,* stated: "a plea of guilty is -- and I'm going to quote this -- "a grave and solemn act, not some empty ceremony." And the Court said that statements that are made to a federal judge in open court are not -- and I'm quoting from the Seventh Circuit here -- "are not trifles that defendants may elect to disregard." And those quotes come from U.S. v. Ellison, E-l-l-i-s-o-n, 798 F.2d 1102 and 798 F.2d 1102 and *United States v. Stewart*, 198 F.3d 984. United States v. Stewart, 198 F.3d 984." R. 592, p. 6. In contrast to the defendants is Ellison and Stewart, Adel Daoud did not admit to the factual basis provided by the government but maintained his innocence of the charges against him. The District Court chose to disregard the import of Adel's words and allowed the plea to proceed.

In *Ellison,* the Court of Appeals reversed the decision of the District Court denying the defendant's motion to withdraw his plea, finding that Ellison's lawyer at the time had an actual conflict of

interest. *United States v. Ellison,* 798 F.2d 1102, 1107-1108 (7th Cir. 1986).

The *Stewart* court found that when a defendant moved to withdraw his guilty plea after the PSI recommended a longer sentence than he expected, and the defendant claimed that he perjured himself at his guilty plea, no fair and just reason for withdrawing the plea was offered. *United States v. Stewart*, 198 F.3d 984, 987 (7th. Cir. 1999). This was not the case with Mr. Daoud.

Notably missing from the District Court's first analysis in *Daoud* was any reference to the *Alford* case, the purpose of an *Alford* plea, and the rights sought to be protected or given up when entering such a plea. Most importantly, an *Alford* plea does not involve admissions of guilt. In this case, it specifically involved an assertion that Mr. Daoud intended to maintain his innocence.

The calculus for giving up his right to trial by jury changed substantially after the Court of Appeals rejected the sentence he had accepted. Through counsel, Mr. Daoud attempted to recuperate his trial rights and vindicate his innocence in view of the change of circumstances wrought by this Court's rejection of the original sentence,

which Mr. Daoud had accepted to protect himself from a greater penalty.

Here, it was the government, and not Mr. Daoud who was dissatisfied with the sentence. Had Mr. Daoud known that his offer to trade his right to vindicate his innocence for a reasonable sentence would not stand, he would have insisted then, as he does now, on exercising his right to be tried by a jury, confront his accusers, and mount his defenses.

2.    The second Request to Withdraw *Alford* Plea should have been granted, based on the particular facts of this case.

After discharging his appointed counsel and deciding to represent himself, Adel Daoud repeated his request to withdraw his *Alford* plea. Upon his second attempt to withdraw his plea, the District Court's analysis was slightly different.

The District Court recognized that actual innocence may be a "fair and just reason" for withdrawing a guilty plea. "Under normal circumstances, a defendant's innocence may constitute a fair and just reason warranting withdrawal of a guilty plea. *See, e.g., Rinaldi*, 461 F.3d at 927; *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001); *United States v. Gomez-Orozco*, 188 F.3d 422, 425 (7th Cir. 1999).

45

But these are not normal circumstances. Mr. Daoud pled guilty

under *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d

162 (1970)."

The District Court then cited the plea colloquy in which Adel

Daoud clearly stated that he was persisting in maintaining his

innocence but accepting the plea nonetheless: "In other words, he pled

guilty *even though he expressly continued to maintain his innocence.*

And this was all quite clearly discussed on the record during the guilty

plea colloquy. *See,* Nov. 26, 2018 Tr. at 35-38. After the government put

on the record an extensive factual basis supporting a guilty plea, Mr.

Daoud said this: "I can say that the government's factual basis supports

a conviction on each count, but I deny culpability and persist in my

innocence. And I wish to plead guilty." *Id.* at 59; *see also Id.* at 60 ("I

mean, my understanding is I'm pleading guilty but I'm retaining my

innocence."). *United States v. Daoud,* 2024 U.S. Dist. LEXIS 42104, *7.

The District Court acknowledged that Adel Daoud had claimed his

innocence from the beginning, but the Court saw no change in

circumstances that would turn his original claim of innocence into a

"fair and just reason" to withdraw his plea.

46

Nonetheless, the District Court acknowledged that additional

discovery had been turned over to the defense since the entry of the

change of plea:

To be sure, there is additional evidence that has been produced to the defense since Mr. Daoud's entry of his guilty plea, specifically the complete recordings made over an extended period in the cell in which Mr. Daoud and the informant were housed. These were produced only in the past several months. But Mr. Daoud has not identified anything from this, or from anything else not available to the defense at the time of his guilty plea, that materially impacts the validity of his *Alford*-based guilty plea. . . . On the question of entrapment in particular, there may have been a viable basis for Mr. Daoud to assert that as a defense on the first and second cases (though not the third) and go to trial, but Mr. Daoud knew that at the time and chose to plead guilty nonetheless. He has pointed to nothing new that materially impacts that decision.

*United States v. Daoud*, 2024 U.S. Dist. LEXIS 42104, *9.

The Court found instead that since his claim of innocence was not

new it could not justify withdrawing his plea:

In other words, Mr. Daoud's claim of innocence is nothing new; he has contended this all along, including at the very hearing in which he nonetheless pled guilty. If claimed innocence were an appropriate basis for withdrawal of a guilty plea by a defendant who pled guilty under *Alford*, that would amount to a rule under which an *Alford* plea could be withdrawn at will by a defendant. That can't possibly be the law. Mr. Daoud has cited no cases that suggest this, and the Court has found none. To the contrary, the law makes clear what should be obvious: a defendant who has pled guilty under *Alford*, maintaining his innocence but pleading guilty anyway, doesn't get to withdraw his plea later simply by, again, maintaining his innocence. *See United States v. Buckley*, 847 F.2d 991, 998 n.4 (1st Cir.

47

1988) Mr. Daoud quite obviously has changed his mind and no longer thinks that pleading guilty was the right decision. But that is not a "fair and just" reason warranting withdrawal of his *Alford* plea.

*United States v. Daoud*, 2024 U.S. Dist. LEXIS 42104, *8-9.

The District Court's error in this decision was four-fold: (1) Adel Daoud was not trying to withdraw his plea after it was initially made, as was the case in *Buckley,* but only after the bargain he made and consequence he accepted was rejected by this Court; (2) at the time of the first plea, Adel's mental state was in question and he was acting under the advice of experienced counsel who was concerned about the impact of a trial on his mental health; (3) while representing himself, Adel received new evidence that might have changed the original calculation he and his then-attorney made to enter an *Alford* plea: and (4) absent the government's appeal and this Court's support for the government's position, Mr. Daoud would not have appealed, but accepted the bargain he made.

Defendant *Buckley* attempted to withdraw his *Alford* plea on the day of sentencing, not after he had received his sentence, the sentence had been rejected by the Court of Appeals, and the case remanded to a different District Court, as in the case of Adel Daoud. In Buckley's plea

colloquy, Buckley did not clearly state that he maintained his innocence as Adel Daoud had done.  Rather, *Buckley* was equivocal about his own innocence and bargained to have the government decline to prosecute his brother in return for his plea. *United States v. Buckley*, 847 F.2d 991, 995 (7th Cir. 1991).

Adel Daoud did not simply change his mind as suggested by the District Court. The circumstances under which Adel was operating had changed drastically. A decision that made sense when it originally was made with the assistance of counsel no longer carried the same benefit and, instead, carried a substantially worse outcome.  In short, the decision calculus was different, providing a "fair and just reason" for the District Court to grant his request to withdraw his *Alford* plea.

The District Court criticized Adel Daoud for failing to point out how the newly received evidence would assist in his attempt to withdraw his guilty plea or would help his case at trial, instead reminding him "what it told Mr. Daoud, in very pointed terms, during the February 23 hearing: it would be wise for Mr. Daoud to resume being represented by counsel instead of representing himself, because counsel would be more familiar with the nature of the showing needed

49

to warrant consideration of a request to withdraw Mr. Daoud's guilty

plea." *United States v. Daoud*, 2024 U.S. Dist. LEXIS 42104, *14.

This admonition regarding Adel's self-representation is

problematic for reasons that will be discussed in detail in section II,

below. The District Court allowed Adel Daoud to represent himself

despite previous findings that Adel was incompetent to stand trial, that

he was diagnosed with serious mental illness(es) for which medication

was prescribed, that he was not at that time taking the prescribed

medication, and that there was an outstanding motion to have Adel re-

evaluated at the time the District Court was assigned the case. The

District Court subsequently recognized these concerns when it aborted

a sentencing hearing to allow for the re-evaluation of Adel Daoud by a

psychiatrist.

D.     Adel Daoud has fair and just reasons for granting his
       motion to withdraw the *Alford* plea.

Adel Daoud had a legitimate entrapment defense, characterized

by the District Court as "a triable case", that he sought to invoke to

support his claim of legal innocence of the crimes alleged against him in

the first two of his three cases, and he had a potential mental health

defense to all the charges against him.  Adel Daoud originally struck

50

the deal an *Alford* plea is designed to effectuate -- accepting a criminal

sentence, while attesting to innocence, to avoid the possibility that the

government's evidence would result in a conviction by a jury and a

penalty great enough to be worth the sacrifice of vindicating one's

innocence.

Adel Daoud maintains that he was entrapped and legally innocent

of the charges against him in his first two cases. "Predisposition, the

principal element in the defense of entrapment," *[citation omitted]*,

"focuses upon whether the defendant was an "unwary innocent" or

instead, an "unwary criminal" who readily availed himself of the

opportunity to perpetrate the crime. *[citations omitted]* The question of

entrapment is generally one for the jury, rather than for the

court. *[citation omitted]*." *Mathews v. United States*, 485 U.S. 58, 63

(1988).

In *Matthews* the defendant argued that he had no criminal intent

and that if the jury concluded otherwise, it was the Government who

induced his intent. *Id.* at 65. The Supreme Court upheld Matthew' right

to present seemingly inconsistent defenses.

Evidence of both prongs of the defense existed in Adel Daoud's case. The government created a crime that would not have occurred, but for the assiduous work of undercover FBI employees and one undercover FBI agent.  In 2011-2012, Adel Daoud was not an "unwary criminal" but a teenager who was exploring the meaning of his religion -- Islam -- and the requirement that Muslims engage in jihad. Specifically, he was struggling with whether jihad meant peacefully striving to be a good Muslim or taking up arms in defense of other Muslims who were under attack by non-Muslims.

According to government witnesses, Adel Daoud did not put together a group of co-conspirators, had no plan of action, and lacked the knowledge, resources, and wherewithal to devise a "terrorist" plot on his own.  *See, e.g.,* Sen. Tr., Vol. IV, pp. 596-597. Adel was planning to go to a university in Saudi Arabia to study religion and become a scholar of Islam, Sen. Tr., Vol. IV, p. 580.  Adel had recently graduated from high school, had few social friends, and spent much time on-line chatting with others who had similar interests in Islam.

In response to Adel's queries about jihad, what was required of a good Muslim, and whether killing was consistent with other aspects of

the religion, the OCEs [on-line confidential employees] befriended Adel and focused on the interpretation of jihad that requires violent responses to attacks on fellow Muslims.  Government agents led Adel to embrace jihad's violent meaning, to think about causing harm to people in this country, and into a plan involving a car bomb - the government's idea -- wired to explode and kill many when it was detonated -- also the government's idea.

The government created a car bomb for the purpose, led Adel to choose a populated area familiar to him, talked with him about the justification for engaging in violence, and assured Adel that "they" would not get caught.  The OCEs did this despite the FBI's evidence that Adel was a teen who had led a sheltered life, had no connections to anyone involved in actually devising a plot to cause harm to others, had no money to purchase the materials required, had no knowledge about where to procure such items or the access to do so, lived at home with his parents, made incredible suggestions -- like using flying cars to commit jihad -- and repeatedly said that he had no knowledge, training or abilities that would make him qualified to engage in violent jihad.

This Circuit has found the following factors important when
analyzing whether a person can be considered "predisposed" to commit
a crime:

- the defendant's character or reputation;
- whether the government initially suggested the criminal activity;
- whether the defendant engaged in the criminal activity for profit;
- the nature of the inducement or persuasion by the government; and
- whether the defendant evidenced a reluctance to commit the offense
that was overcome by government persuasion.

*United States v. Anderson,* 55 F.4th 545, 552 (7th Cir. 2022).

As discussed above, Adel was an "unwary innocent" not a "willing
criminal" when the government became involved in his life.  Rather, the
government reinforced the notion that being a "good Muslim" meant
being willing to fight or die for Islam. In the face of Adel's reluctance,
the government's agents simply changed tactics and redoubled their
efforts to persuade Adel to work with them.

This Circuit has found that "[t]he most significant factor is
reluctance overcome by government persuasion. *Id.* at 437, citing,
among others, *United States v. Pillado*, 656 F.3d 754, 764 (7th Cir.
2011). At the risk of emphasizing the obvious, "reluctance ... overcome
by government persuasion" shows that the two elements of
an entrapment defense — lack of predisposition and government

inducement — are closely related. Reluctance can prompt further efforts at government persuasion that can rise to the level of inducement, supporting the entrapment defense." *United States v. Anderson*, 55 F.4th 545, 552-553 (7th Cir. 2022).  That is what happened in Adel Daoud's case.

     The Supreme Court and this Circuit have recognized that a lawyer's failure to investigate and present mitigating evidence at sentencing may constitute ineffective assistance of counsel, in violation of the Sixth Amendment right to counsel. In *Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005), for instance, counsel failed to investigate the extent and seriousness of the defendant's intellectual disability and mental illness to avoid the death penalty under *Atkins*.  The Supreme Court found that counsel was ineffective and that the defendant was prejudiced by counsel's failure to investigate his mental health issues.  *See, also, Pruitt v. Neal*, 788 F.3d 248, 271-272 (7th Cir. 2015)(Pruitt's trial counsel's failure to investigate Pruitt's mental illness fell below an objective standard of reasonableness.).

Adel Daoud was acting as his own trial counsel with the approval of the District Court who knew part of Mr. Daoud's mental health history. Expecting that a defendant would or could be relied upon to competently investigate his own mental health and make an objective judgment about the mitigation value of any psychiatric evaluation is unrealistic. Mr. Daoud's flawed decision-making process about his own mental health examination was detrimental to him at sentencing.

Adel Daoud would not permit the use of a psychiatric examination in mitigation on his behalf, possibly demonstrating the problem with allowing self-representation in the face of known and unknown mental health issues. It has yet to be established whether he was or was not suffering from the effects of a mental illness when the OCEs approached and befriended him on-line. There is a family history of mental illness, in that Adel's older brother suffers from schizophrenia, and Adel manifested early symptoms that he, too, may suffer from a disorder: repeated short-term obsessions, delayed speech, grandiosity in thought.

The first District Court found that imprisonment either triggered or exacerbated mental illness in Adel Daoud to the extent that Adel was found incompetent to stand trial and had to be sent for diagnosis and

56

treatment.  *See,* Affidavit of Dr. Xenakis, R. 188-7.  Also, clearly

established in the record is the fact that medication helped return Adel

to competency. *Id.*  At the time Adel professed his innocence and

entered an *Alford* plea, he was taking the medication that had been

prescribed for him.

Judge Kennelly delayed sentencing Adel until he submitted to a

psychiatric evaluation, the results of which were not disclosed to the

Court or used in mitigation at the conclusion of the sentencing

hearings. The decision whether to use the results of the evaluation was

left to Adel, himself.  Arguably, he was not the best person to evaluate

whether Dr. Conway's report should have been used in mitigation at

sentencing.

Adel Daoud's mental state at the time he was engaged in on-line

conversations with the OCEs was an important factor in any

determination of his criminal intent, predisposition to engage in specific

criminal activity, and whether the FBI knew or had reason to know that

they were engaging with a young man who needed help, rather than

one who was predisposed to go along with any plan they suggested to

him. Or, realizing that he was susceptible to their influence, the FBI

57

agents purposefully took advantage of a lonely and curious teen to justify the time and effort they were expending trolling internet chatrooms and other on-line sites for people who were actively seeking to harm the United States.

One of the reasons cited by Adel's then-counsel for entering an *Alford* plea was that his mental state near the time of trial was fragile and that counsel did not believe Adel could withstand the rigors of a three-week trial at that time. R. 188. For his part, Adel was distressed by his attorneys' failure to listen to him, his belief that his attorneys were taking money from his family while also being paid by the Court, his desire to go to trial to vindicate his innocence, and his frustration with the recurrence of his attorneys' claim that Adel was incompetent. R. 134. In either case, Adel had legitimate concerns that were left unaddressed,  so he decided to proceed *pro se* instead of continuing with new counsel, a decision the District Court erred in permitting.

II.    The District Court erred in allowing Adel Daoud to represent himself without  ensuring that the waiver of his right to representation was both knowing and intelligent.

A.    Standard of Review

The standard of review for whether a *Faretta* hearing has been sufficient and the defendant's right to self-representation has been undertaken knowingly and intelligently is *de novo* with factual determinations being reviewed for clear error. *See, United States v. Jones*, 65 F.4th 926, 929 (7th Cir, 2023)

B.     The right to self-representation must be undertaken knowingly and intelligently.

This Circuit has held that "[w]hen a defendant clearly and unambiguously invokes his Faretta right to proceed *pro se*, the district court is not required to take the statement at face value and as final. To the contrary, the district court must refuse to accept a supposed waiver until the record shows that the waiver is knowing and intelligent." *United States v. Vizcarra-Millan*, 15 F.4th 473, 482 (7th Cir. 2021).  A A "knowing and intelligent" waiver means that the accused must understand the benefits of having counsel and that he is giving up those benefits. *Faretta v. California,* 422 U.S. 806, 835 (1975). A *pro se* defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835." *United States v. Vizcarra-Millan*, 15 F.4th 473, 486 (7th. Cir. 2021).

59

This Circuit requires a thorough and formal inquiry when a defendant declares that he wishes to represent himself. This inquiry must "probe[] his age, education level, and understanding of the criminal charges and possible sentences." *United States v. Johnson*, 980 F.3d 570, 577 (7th Cir. 2020).

The *Faretta* inquiry in this case was insufficient, considering Adel Daoud's previous competency and mental health issues. A report by Dr. Xenakis, submitted in support of a request for a competency hearing found the following issues, putting the Court on notice that more care must be taken in its decision to allow Adel Daoud to represent himself:

(1)    "Mr. Daoud has consistently demonstrated fragmented and illogical thinking that affects his capacity to function." R. 188-7, p. 4, para. 7.

(2)    "Mr. Daoud has an older brother who has been reportedly diagnosed with a psychotic serious mental illness. The genetic clustering of these conditions in families raises the likelihood of the existence of such an illness in Mr. Daoud." *Id.,* para 8.

(3)    "Mr. Daoud has repeatedly failed to comprehend and appreciate in lengthy conversations the seriousness and consequences of the charges

60

against him. He essentially disregards the facts of his case and its consequences with delusional explanations. The rigidity of his thought disorder renders him incapable of knowing, understanding, and appreciating reality-based options for resolving his case, and thus renders Mr. Daoud unable to understand the nature and consequences of the proceedings against him." R. 188-7, p. 5, para 9.

(4)     "Mr. Daoud has not been capable of engaging in constructive and thoughtful conversations with his family, and most particularly his attorneys. This inability to conduct reasonable and logical conversations raises serious concerns of the existence of a significant thought disorder and mental disease or defect that renders Mr. Daoud unable to assist properly in his defense". *Id.,* para. 10.

Medication was required to restore Mr. Daoud to "competence". Yet, the District Court did not inquire whether Mr. Daoud was taking the prescribed medication, even though Adel had quit taking his medication shortly after his return from the medical facility at FCI Butner. Nor did the Court inquire about any evaluation after Mr. Daoud quitting his medication that would demonstrate that he was competent and able to represent himself. The District Court did not

question Mr. Daoud,  but lectured him, rendering the *Faretta* colloquy
insufficient.


C.    The *Faretta* colloquy in this case was insufficient.

"[T]he Constitution permits States to insist upon representation
by counsel for those competent enough to stand trial under *Dusky
v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960)] but
who still suffer from severe mental illness to the point where they are
not competent to conduct trial proceedings by themselves." *Id.* at 178."
*Tatum v. Foster*, 847 F.3d 459, 466 (7th Cir. 2017).  The District Court
should have insisted that Adel proceed with counsel to represent him,
appointing new counsel if necessary, to ensure that the proceedings
against him were fair and professionally handled.

Several months after having been assigned Adel Daoud's case,
Adel wrote to the Court, asking to discharge his Court-appointed lawyer
and represent himself. R. 424.

The District Court convened a hearing on December 20, 2022, to
address two of Adel Daoud's *pro se* filings, one of which was his Motion
to Discharge Counsel and Go Pro Se.  R. 592, Hrg. Transcript.  The

62

Court acknowledged that Mr. Daoud's plea was an *Alford* plea, in which

"Mr. Daoud acknowledged that the government's evidence was

sufficient to prove his guilt, but he did not admit his guilt and he

preserved his claim of innocence. The guilty plea was accepted." R. 592,

p. 3. The Court told Mr. Daoud that it was not a good idea to represent

himself:

> I can tell you to an absolute moral certainty that as
> smart of a person as you might be and as well as you might
> know your case, and I get from your submissions that you
> know it quite well, that you will not do as good a job as a
> lawyer at questioning the witnesses. You just won't. It's not
> something you do for a living, it's not something you've
> practiced, it's not something you've worked at, it's not
> something that you have had experience with.

R. 592, p. 12.  The Court explained that Adel would not be as good at

questioning witnesses as an experienced lawyer, and that he would

have an opportunity in allocution to say anything at all that he wanted

the Court to know in fashioning a fair sentence. *Id*. 12-14.

The Court then gave Adel an opportunity to speak.  Mr. Daoud

told the Court:

> As far as the counsel, it's like no offense to you, but I don't
> have any confidence in any counsel that they will speak for
> me, that they will do what I ask them to do or make the
> arguments I want them to make, and has proved this to me
> over and over and over again since I've been locked up. They

63

don't do what I ask them to do, and if they do, they don't do it right. So if you don't like how somebody does something, logically you do it yourself.

R. 592, p. 16.

Adel Daoud again expressed his desire to go to trial in the case if

he were unable to get the case dismissed:

> The motion I made I made because I don't want to go for sentencing. I don't want to go for sentencing because I want to fight my case to the end even if it means going to a trial. If it doesn't get dropped***, I want to fight for a trial***. I would be less mad if I mess up -- because anyone can make a mistake. A lawyer can make a mistake if he's educated. But if I mess up my own case, then I messed it up, right. I mean, I'd be less mad at me if I mess it up than if a lawyer messed it up.

R. 592, p. 17.  Adel Daoud finished his explanation to the Court, saying,

"I don't trust lawyers, and I don't want lawyers to represent me or

speak for me any more of my cases."  *Id.* at 20. Adel's response

demonstrated that he did not understand the procedural posture of the

case, mistakenly believed that he still had the ability to obtain a

dismissal or seek a trial, and was having trust issues that may have

indicated paranoia on his part.

The Court then amplified the cons of self-representation:

> Look, if you don't want to have a lawyer for your sentencing hearing, that's fine, but I'm going to tell you this. Okay? The

same rules will apply to you without counsel that would
apply to a lawyer if you had one. You're not going to get to do
anything you want in questioning witnesses, you're going to
have to follow the rules of evidence, which, by the way, you
don't know because you've never worked with them before.
You can read them in a book but that's different from having
worked with them. If you call witnesses, you're going to have
to subpoena them in, which, again, you don't know what to
do because you've never done it before. Obviously, you can
ask Mr. Jonas for all the records that you want to. And that's
easy enough to do. You can send him a letter. But as far as
the procedural aspects of conducting a sentencing hearing,
you have exactly this much experience. I'm holding up a
zero. None. Okay. If you want to do that, it's your life, that's
fine. But you're going to have to follow the same rules as
everybody else. You're not going to get to do anything you
want. You're going to have to follow the same rules a lawyer
would.

With all of that, if you want to discharge your counsel, you're
entitled to do it. And that's fine. I think it's a colossally
stupid decision. But you know what? In life, people are
allowed to make decisions that I think are colossally stupid.
It's your life, not mine. . . .

R. 592, pp. 25-27.  The Court did not appoint an independent counsel to

discuss the pros and cons of self-representation with him. The Court did

appoint the counsel Adel wanted to fire as stand-by counsel and asked

Mr. Daoud one more time whether he wished to proceed *pro se*, to which

Mr. Daoud responded that he did. R. 592, pp. 27-29.

The District Court did not approach the hearing as if it was the

decision of the Court to allow Mr. Daoud to proceed *pro se*. Rather, the

65

Court treated the decision as if it were entirely up to Mr. Daoud.  The District Court did not ask Mr. Daoud "his age, education level, and understanding of the criminal charges and possible sentences." Nor did the Court inquire at this time about the former Court's finding of incompetency, Mr. Daoud's history with medication, whether he was currently taking the medication that previously had restored him to competence, or about the impact of any of his diagnosed mental illness on Mr. Daoud's ability to handle the various aspects of representing himself. The Court did not ask any questions of Mr. Daoud to establish whether his waiver of the right to counsel was knowing and intelligent in the context of the case.

To determine whether a defendant has knowingly waived the right to counsel, this Court considers four factors: "(1) "the extent of the district court's formal inquiry into the defendant's waiver of counsel, if any" at the *Faretta* colloquy; (2) "other evidence in the record showing the defendant understood the dangers and disadvantages of self-representation"; (3) "the defendant's background and experience"; and (4) "the context of the choice to proceed *pro se*." *United States v. Jones*, 65 F.4th 926, 929 (7th Cir. 2023). ."

The District Court in this case did not ask any questions of Mr. Daoud, apart from whether he still wished to proceed *pro se* after hearing the Court's recital of all the reasons why doing so was a "colossally stupid" idea.  Courts have found that the failure to ask about a person's understanding of the possible penalties he faced was reversible error.  *See, e.g., United States v. Erskine*, 355 F.3d 1161, 1162 (9th Cir. 2004)[ "We hold that Erskine's waiver of his Sixth Amendment right was invalid because the court failed to advise him correctly at the *Faretta* hearing of the possible penalties he faced, and the record does not show that he had an accurate understanding of the potential consequences at the time he agreed to waive that right."].

The District Court did not ask about Mr. Daoud's reasons for proceeding *pro se* to determine whether Mr. Daoud had thought through the representation and his options before deciding to undertake his own representation.

Adel Daoud did not understand the posture of his case, what he was facing, or what he would or would not be permitted to in the context of the sentencing hearing.  The District Court had denied his Motion to Withdraw *Alford* plea and was talking about setting the case

67

for sentencing.  Rightly or wrongly, Adel no longer had the opportunity to proceed to trial but was going to sentencing whether he wanted to do so or not.

The District Court told Adel: "I know that you want to go for a trial. I've denied that. I've denied your motion to withdraw your guilty plea. The case is not going to go to trial. You will have the right to appeal that after the sentencing hearing. If the Court of Appeals thinks I made an erroneous ruling, they'll reverse it, they'll probably send it to some other judge, and that's just fine. But that's the ruling I made right now. So your desire to have a lawyer for a trial, that's off the table right now. We're talking about a sentencing hearing." R. 592, p. 25.

No questions were asked about Mr. Daoud's mental health status - past or present.  This was important because there had been a history of mental health issues in the case prior to its remand from the Court of Appeals.  This Court has found that ""the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960)] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by

68

themselves." *Id.* at 178." *Tatum v. Foster*, 847 F.3d 459, 466 (7th Cir. 2017).

The Supreme Court in *Indiana v. Edwards,* decided that mental status was an important part of the inquiry into whether a person may be permitted to proceed *pro se* in their own case. *Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345, 466 (2008), introduced the possibility of considering the defendant's legal knowledge. . . [i]n *Edwards,* the Court faced the problem of "a criminal defendant whom a state court found mentally competent to stand trial if represented by counsel but not mentally competent to conduct that trial himself." *Id.* at 167. In that situation, it held, the state may insist that the defendant proceed to trial with counsel."

In Mr. Daoud's case, there was no inquiry into competence - either to stand trial or to conduct his own sentencing hearing -- despite a record replete with findings of incompetence, restoration to competence through medication, reports that Mr. Daoud had ceased taking his medication, and a motion for another competency evaluation made by previous counsel.

III.   The District Court's decision to allow Adel Daoud to represent himself at  sentencing resulted in an unreasonable sentence.

A.     Standard of Review

This Court reviews the substantive reasonableness of a sentence using the abuse of discretion standard. *United States v. Petre*, 2025 U.S. App. LEXIS 25751, 2025 WL 2813609.

B.     The Court erred in allowing Mr. Daoud to represent himself at sentencing, resulting in a substantively unreasonable sentence.

Adel Daoud did not present important mitigation on his own behalf at sentencing.  Instead, he treated his sentencing hearing as if it were a trial to demonstrate his innocence of the offenses to which he had entered an *Alford* plea.  The District Court knew that Adel maintained his innocence and had a history of mental health issues that were part of the record.  In view of these realities, the District Court erred in allowing Adel Daoud to proceed without the full assistance of counsel at this most critical stage in the proceeding against him.

Adel Daoud should not have received the same sentence as an adult for the offense alleged when he was still an adolescent.  The Supreme Court concluded in *Roper* v. *Simmons*, 543 U.S. 551, 125 S. Ct.

70

1183, 161 L. Ed. 2d 1 (2005)," that juvenile offenders are generally less culpable than adults who commit the same crimes." *Graham v. Florida*, 560 U.S. 48, 86 (2010). The Supreme Court has long recognized the important differences between adults and juveniles when considering an appropriate sentence. *See, e.g., Miller v. Alabama,* 567 U.S. 460 (2012).

The Supreme Court cited three significant gaps between juveniles and adults that render juveniles less deserving of the most severe punishments:

First, children have a "'lack of maturity and an underdeveloped sense of responsibility,' " leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S., at 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1. Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.,* at 570, 125 S. Ct. 1183, 161 L. Ed. 2d 1.

*Miller v. Alabama*, 567 U.S. 460, 471.

When FBI agents began grooming Adel to become involved in violent "jihad" activity, Adel was a teen who was just finishing high school and beginning to think about and plan for attending university.

71

He had just turned 18 years old when agents began interacting with him on-line.

As a young Muslim with virtually no worldly experiences, Adel, like many teens, was susceptible to the influence of those he perceived to be friends and mentors. Teenagers are highly susceptible to peer influence due to a combination of biological brain development and psychological factors. This heightened vulnerability is a normal part of adolescent development and can result in both positive and negative outcomes. "Influence occurs when an individual acts or thinks in ways that he or she might not otherwise act or think, an effect that can be attributed to experiences with friends and affiliates" (Laursen, 2018, p. 447)." *See,* Laursen, Brett and Veenstra, Renée, " Toward understanding the functions of peer influence: A summary and synthesis of recent empirical research" J Res Adolesc., 2021 Nov 24;31(4):889–907. doi: 10.1111/jora.12606.

Recent scientific research has demonstrated that neurobiological factors are contributors to the increased vulnerability of adolescents and young adults. For example, neurobiologists have found that "[t]he prefrontal cortex is the area of the brain responsible for

judgment, risk assessment, and decision-making. It is one of the last regions to fully mature, with development continuing into a person's early 20s." S Ahmed et al, "Susceptibility to prosocial and antisocial influence in adolescence," J Adolesc. 2020 Oct; 84:56–68. doi: 10.1016/j.adolescence.2020.07.012.

At the same time, the limbic system, which controls emotions and reward processing, develops much earlier. The resulting imbalance between the "thinking" prefrontal cortex and the "feeling" limbic system can lead teens to seek social approval and engage in risky, rewarding behaviors before they can effectively regulate their impulses. *See, e.g.,* Jason Chein et al, "Peers increase adolescent risk taking by enhancing activity in the brain's reward circuitry" Dev Sci. 2011 Mar;14(2):F1– F10. doi: 10.1111/j.1467-7687.2010.01035.

These developments in brain science were recognized by the Supreme Court in cases finding that a life sentence without parole for a juvenile offender violates the Eighth Amendment's prohibition on cruel and unusual punishment:

In *Roper*, we cited studies showing that " '[o]nly a relatively small proportion of adolescents' " who engage in illegal activity " 'develop entrenched patterns of problem behavior.' *Id.,* at 570, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (quoting Steinberg & Scott, Less Guilty by Reason of

Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty, 58 Am. Psychologist 1009, 1014 (2003)). And in *Graham*, we noted that "developments in psychology and brain science continue to show fundamental differences between [*472] juvenile and adult minds"--for example, in "parts of the brain involved in behavior control." 560 U.S., at 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825.**5** We reasoned that those findings--of [**2465] transient rashness, proclivity for risk, and inability to assess consequences--both lessened a child's "moral culpability" and enhanced the prospect that, as the years go by and neurological development occurs, his " 'deficiencies will be reformed.' *Ibid.* (quoting *Roper*, 543 U.S., at 570, 125 S. Ct. 1183, 161 L. Ed. 2d 1).

*Miller v. Alabama*, 567 U.S. 460, 471-472

Arguments and evidence based on the science applicable to Adel's stage in life were not presented to the District Court and did not factor into the important decisions the court was asked to make with respect to allowing Adel to withdraw the *Alford* plea, represent himself, and proceed to sentencing without the full assistance of experienced counsel.

The Supreme Court recognized that a person's age at the time of the offense must be considered, especially when an adolescent is involved. The deterrent effect, the need for incapacitation, and proportionality are all affected by age, calling for *less* severe sentences than would be imposed on an adult in a similar circumstance.

An offender's age," we made clear in *Graham*, "is relevant to the Eighth Amendment," and so "criminal procedure laws that fail to take defendants' youthfulness into account at all [*474] would be

74

flawed." *Id.,* at 76, 130 S. Ct. 2011, 176 L. Ed. 2d 825. The Chief Justice, concurring in the judgment, made a similar point. Although rejecting a categorical bar on life-without-parole sentences for juveniles, he acknowledged "*Roper*'s conclusion that juveniles are typically less culpable than adults," and accordingly wrote that "an offender's juvenile status can play a central role" in considering a sentence's proportionality."[citations omitted]

*Miller v. Alabama*, 567 U.S. 460, 473-474.

"Researchers conclude that "most juvenile offending is, in fact, limited to adolescence" and that "the process of maturing out of crime is linked to the process of maturing more generally, including the development of impulse control and future orientation." Steinberg et al.,*H supra*, at 1. The "signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside," and generally does. *Roper v. Simmons*, 543 U.S. 551, 570, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), *Kelly v. Brown*, 851 F.3d 686, 689 (7th Cir. 2017).

Had Mr. Daoud been represented by counsel, counsel would have been able to present information about Adel's youth and vulnerability at the time of the offenses, in mitigation of Adel's responsibility for the offenses and the degree to which he should receive such severe punishment for them. Any counsel representing him had the duty to

75

investigate his background.  "It is unquestioned that under prevailing professional norms at the time of [Andrus'] trial, counsel had an 'obligation to conduct a thorough investigation of the defendant's background.'" *Porter* v. *McCollum*, 558 U. S. 30, 39, 130 S. Ct. 447, 175 L. Ed. 2d 398 (2009) (*per curiam*) (quoting *Williams* v. *Taylor*, 529 U. S. 362, 396 (2000)))." *Andrus v. Texas*, 590 U.S. 806, 814 (2020). This requirement highlights the error of the District Court in allowing Adel Daoud to represent himself at sentencing, while holding him to the same standards as an attorney.

The Supreme Court found that "Juveniles mistrust adults and have limited understandings of the criminal justice system and the roles of the institutional actors within it. They are less likely than adults to work effectively with their lawyers to aid in their defense. [citations omitted] Difficulty in weighing long-term consequences; a corresponding impulsiveness; and reluctance to trust defense counsel, seen as part of the adult world a rebellious youth rejects, all can lead to poor decisions by one charged with a juvenile offense. [citation omitted] These factors are likely to impair the quality of a juvenile defendant's representation." *Graham v. Florida*, 560 U.S. 48, 78 (2010). These

problems, which unfurled during Adel Daoud's case, support a finding of error in allowing Adel Daoud to represent himself and in failing to consider the differences between juvenile and adult offenders when imposing an excessive sentence of 27 years[1] on Adel Daoud.

C.    Adel Daoud's mental health was a critical factor to consider in determining the appropriate sentence for Adel, but he did not permit it.

The District Court adjourned Adel Daoud's sentencing at the conclusion of three days of witness testimony to inquire whether a psychological evaluation for mitigation had been or should be done, saying, "Mental illnesses don't just appear and reappear. They can be controlled with medication, I mean, depending on what they are or not. I guess I'm left with the question of whether it was ever considered by the defense either before or now whether it would -- of whether to have Mr. Daoud evaluated just in terms of a mitigation standpoint just to assess or whether somebody could assess whether and to what extent

---

[1] A sentence of 27 years for a crime created by the FBI that caused harm to no one is treated as seriously as that of a young man who shot a woman three times in the face when he was 17 years old and received a sentence of 35 years, after having caused actual harm and permanent damage. *United States v. Ferguson,* 889 F.3d 314 (7th Cir. 2018).

any mental condition that he had might have contributed to one or more of the offenses."  Sen.Tr, Vol. VI, p. 846.

The District Court asked a specific question of the parties: "Was there ever consideration given to having somebody examine Mr. Daoud and render an opinion regarding whether and to what extent he had any mental condition that might have contributed to his commission of the offenses?" R. Sen. Tr., Vol. VI, p. 847.

The parties did not know the answer to the Court's question, so the Court gave Adel Daoud and his standby counsel time to consider whether such an evaluation should be done. The District Court took the matter a step further and suggested that an evaluation would be done by a reasonably competent defense lawyer in a case such as this one, and that it would be relevant to the District Court's determination of the appropriate sentence under the factors outlined in Title 18, United States Code, Section 3553(a). Sen. Tr., Vol. VI, p. 852-853.

The evaluation was completed but Mr. Daoud did not submit it in mitigation for his sentencing hearing, limiting the District Court's ability to consider mental health issues in determining the appropriate sentence for Mr. Daoud.

*CONCLUSION*

The District Court abused its discretion in denying Mr. Daoud's motions to withdraw his *Alford* plea, in violation of Mr. Daoud's Fifth and Sixth Amendment rights. On remand, Mr. Daoud had fair and just reasons for withdrawing his *Alford* plea, including the change in circumstances imposed by this Court in requiring a more severe sentence for Mr. Daoud.

The District Court erred in permitting Mr. Daoud to represent himself without making the requisite findings about Mr. Daoud's ability to do so, in keeping with the United States Supreme Court's holding in *Faretta v. California*, and considering Mr. Daoud's known mental health history.

The District Court's decision, allowing Mr. Daoud to represent himself, prejudiced Adel Daoud at sentencing. Mr. Daoud treated the sentencing hearing as if it were a trial and refused to submit mitigating mental health and other evidence on his own behalf, resulting in a sentence that was substantively unreasonable.

WHEREFORE, ADEL DAOUD, through counsel, respectfully requests that this Court reverse Mr. Daoud's conviction to allow Mr. Daoud to proceed to trial.

In the alternative, Mr. Daoud requests that this Court vacate his sentence and remand to the District Court so that he can be sentenced with the benefit of representation by counsel.

DATE:        November 28, 2025        Respectfully submitted,

                                      By:    s/Andréa E. Gambino
                                             Attorney for Adel Daoud

*CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)*

The undersigned, counsel of record for the Defendant-Appellant,

Adel Daoud, furnishes the following in compliance with F.R.A.P Rule

32(a)(7):

I hereby certify that this brief conforms to the rules contained in

F.R.A.P Rule 32(a)(7) for a brief produced with 14 pt. Century

Schoolbook, a proportionally spaced font. The length of this brief

contains 16,993 words.

DATE:      December 3, 2025      /s/*Andréa E. Gambino*
                                 Law Offices of Andréa E. Gambino
                                 53 W. Jackson Blvd., Suite 1332
                                 Chicago, Illinois 60604
                                 (312) 322-0014
                                 andrea@gambinodefense.com

*CIRCUIT RULE 31(e)(1) CERTIFICATION*

Pursuant to Rule 31(e)(1), counsel hereby certifies that a digital

version of the required short appendix is available in a non-scannable

PDF format.  The Judgments in a Criminal Case, Orders, and

Sentencing transcripts are available in non-scannable PDF format.

DATE:       December 3, 2025          BY:   s/Andréa E. Gambino
                                            Attorney for Adel Daoud

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312) 322-0014
andrea@gambinodefense.com

*PROOF OF SERVICE*

I, Andréa E. Gambino, attorney for Adel Daoud, certify that on

December 3, 2025, I served an electronic copy of this Opening Brief and

Short Appendix on:

Georgia Alexakis, Esq.
Assistant United States Attorney
219 S. Dearborn, 5th Floor
Chicago, Illinois 60604

_____

s/Andréa E. Gambino
Attorney for Adel Daoud

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, IL 60604
(312) 322-0014
agambinolaw@gmail.com

*CIRCUIT RULE 30(d) STATEMENT*

Pursuant to Circuit Rule 30(d) counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.


/s/*Andréa E. Gambino*
Attorney for the Defendant-Appellant, Adel Daoud




Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, IL 60604
(312) 322-0014
andrea@gambinodefense.com

No. 24-2370

_____

_____

In the
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ADEL DAOUD,
Defendant-Appellant.

Appeal from the United States District Court,
Northern District of Illinois,
Eastern Division
Case Nos.
1:12-CR-723-1
1:13-CR-703-1
1:15-CR-487-1

The Honorable Matthew F. Kennelly, Presiding

*ADEL DAOUD'S REQUIRED SHORT APPENDIX*

DATE:      November 28, 2025          Respectfully submitted,

                                       By:   s/Andréa E. Gambino
                                             Attorney for Adel Daoud

## ATTACHED REQUIRED SHORT APPENDIX

Judgment Orders……………………………………………….........A-1

Order Denying Motion to Withdraw *Alford* Plea and Proceed Pro Se
.......................................................................................................A-53

Order Denying Motion to Withdraw *Alford Plea* (2) .........................A-54

Case: 1:12-cr-00723 Document #: 584 Filed: 08/08/24 Page 1 of 20 PageID #:6585
ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case             (Note: Identify Changes with Asterisks (*)).
Sheet 1     Case: 24-2370     Document: 41-2     RESTRICTED     Filed: 12/03/2025     Pages: 696 of 159)

# UNITED STATES DISTRICT COURT
## Northern District of Illinois

UNITED STATES OF AMERICA

v.

ADEL DAOUD

**SECOND AMENDED JUDGMENT IN A CRIMINAL CASE**

Case Number:    1:12-CR-00723(1)

USM Number:    43222-424

Quinn Alexandra Michaelis
Defendant's Attorney

**Date of Original Judgment: 8/5/2024 (Or Date of Last Amended Judgment)**

**Reason for Amendment:**

☒ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or ☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

## THE DEFENDANT:

☒ pleaded guilty count(s) one (1) and two (2) of the indictment.

☐ pleaded nolo contendere to count(s)      which was accepted by the court.

☐ was found guilty on count(s)      after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. §2332a(a)(2)(D) Attempted Use of a Weapon of Mass Destruction | 9/14/2012 | 1 |
| 18 U.S.C. §844(i) Malicious Attempt to Damage/Destroy by Explosives | 9/14/2012 | 2 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.  **Other than the amendments or modifications stated in this judgment, the judgment previously entered shall stand. (See attachments)**

☐ The defendant has been found not guilty on count(s)

☐ Count(s) «dismissd_counts» dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 5, 2024
Date of Imposition of Judgment

Signature of Judge

Matthew F. Kennelly , United States District Judge
Name and Title of Judge

8-8-2024
Date

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                    (Note: Identify Changes with Asterisks (*)).
Sheet 2 – Imprisonment                                                                                              Judgment - Page 2 of 20

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:12-CR-00723(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Three hundred and Twenty-four (324) months as to count one (1) and two hundred and forty months (240) as to count 2 of the indictment.
The terms of imprisonment are to run concurrently with each other and are to run concurrently with the sentence imposed in the defendant's
other cases in the Northern District of Illinois; 1:13-cr-703 and 1:15-cr-487.

☒        The court makes the following recommendations to the Bureau of Prisons: Any costs of imprisonment are waived due to the

defendant's inability to pay.

☒        The defendant is remanded to the custody of the United States Marshal.

☐        The defendant shall surrender to the United States Marshal for this district:

☐        at           on

☐        as notified by the United States Marshal.

☐        The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐        before 2:00 pm on

☐        as notified by the United States Marshal.

☐        as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this
judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case: 1:12-cr-00723 Document #: 584 Filed: 08/08/24 Page 3 of 20 PageID #:6587

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case          (Note: Identify Changes with Asterisks (*))
Sheet 5 – Criminal Monetary Penalties

Case: 1:21-cr-00420   Document #: 41-2   RESTRICTED   Filed: 12/03/2025   Page 98 of 159
Judgment Page 3 of 20

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:12-CR-00723(1)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of: Life. This term of supervised release is to run concurrently with the supervised release imposed on the defendant's other cases in the Northern District of Illinois; 1:13-cr-703 and 1:15-cr-487. Any costs of supervised release are waived due to the defendant's inablity to pay.

   The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall not commit another Federal, State, or local crime.

2. The defendant shall not unlawfully possess a controlled substance.

3. The defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions —** The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D);** and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall seek, and work conscientiously at, lawful employment or, if he is not gainfully employed, the defendant shall pursue conscientiously a course of study or vocational training that will equip him for employment.

*2. The defendant shall not knowingly meet or communicate with any person whom he knows to be engaged, or planning to be engaged, in criminal activity and shall not knowingly meet or communicate with the following persons: Any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in 8 U.S.C. §1189), or who are, or claim to be, involved with violent acts, or advocating for acts of violence; and, communicating with any persons who are located outside of the United States with the exception to family members and persons previously identified and approved by the Probation Office.

3. The defendant shall not possess a firearm, destructive device, or other dangerous weapon.

4. The defendant shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

5. The defendant shall not knowingly leave from the federal judicial district where he is being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

6. The defendant shall report to the probation office in the federal judicial district to which he is released within 72 hours of his release from imprisonment. The defendant shall thereafter report to the probation officer at reasonable times as directed by the court or a probation officer.

7. The defendant will permit a probation officer to visit him at any reasonable time at home or any location that the probation officer may enter by right or concept and will permit confiscation of contraband in plain view.

8. The defendant shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. The defendant shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case (Note: Identify Changes with Asterisks (*))
Sheet 5 – Criminal Monetary Penalties — Judgment Page 4 of 20

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

9. The defendant shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

10. The defendant shall satisfy such other special conditions as ordered below.

11. The defendant shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. §1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified below:

**During the term of supervised release:**

1. The defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

2. The defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

3. The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

4. The defendant should attend violent extremism counseling from providers as directed by the Probation Office, and agreed to by the Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant, or upon order of the Court. The defendant shall also authorize the release of any mental health and/or violent extremism counseling records to the probation officer.

5. The defendant shall not possess or use at any location (including his place of employment), any external storage device without the prior approval of a probation officer.

6. The defendant shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. The defendant shall identify all computers to which he has access. The defendant shall consent to the installation of computer monitoring software on all computers to which he has access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. The defendant shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

7. The defendant shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

8. The defendant shall be required to submit to periodic polygraph testing at the direction of the probation office as a means to ensure that he is in compliance with the requirements of his supervision or treatment program.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case (Note: Identify Changes with Asterisks (*))
Sheet 5 – Criminal Monetary Penalties

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:12-CR-00723(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $200.00 | $.00 | $.00 | $.00 | $.00 |

☐  The determination of restitution is deferred until          . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

☐  Restitution amount ordered pursuant to plea agreement $

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**.  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the          .

☐  the interest requirement for the          is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case (Note: Identify Changes with Asterisks (*))
Sheet 6 – Schedule of Payments

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒ Lump sum payment of $200 due immediately.

☐ balance due not later than , or

☐ balance due in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal *(e.g. weekly, monthly, quarterly)* installments of $ over a period of *(e.g., months or years)*, to commence *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal *(e.g. weekly, monthly, quarterly)* installments of $ over a period of *(e.g., months or years)*, to commence *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
|---|---|---|---|

**See above for Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Case: 1:12-cr-00723 Document #: 575 Filed: 08/08/24 Page 1 of 20 PageID #:6591
ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                    (Note: Identify Changes with Asterisks (*))
Sheet 1                      Case: 24-2370      Document: 41-2      RESTRICTED      Filed: 12/03/2025      Pages: 6602 of 159)

# UNITED STATES DISTRICT COURT
## Northern District of Illinois

UNITED STATES OF AMERICA

v.

ADEL DAOUD

**Date of Original Judgment: 5/20/2019**
**(Or Date of Last Amended Judgment)**

**Reason for Amendment:**

☒ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

## AMENDED JUDGMENT IN A CRIMINAL CASE

Case Number:     1:12-CR-00723(1)

USM Number:     43222-424

Quinn Alexandra Michaelis
Defendant's Attorney

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or ☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

## THE DEFENDANT:

☒ pleaded guilty count(s) one (1) and two (2) of the indictment.

☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.

☐ was found guilty on count(s) _____ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. §2332a(a)(2)(D) Attempted Use of a Weapon of Mass Destruction | 9/14/2012 | 1 |
| 18 U.S.C. §844(i) Malicious Attempt to Damage/Destroy by Explosives | 9/14/2012 | 2 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.  **Other than the amendments or modifications stated in this judgment, the judgment previously entered shall stand. (See attachments)**

☐ The defendant has been found not guilty on count(s)

☐ Count(s) «dismissd_counts» dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 5, 2024
Date of Imposition of Judgment

_____
Signature of Judge

Matthew F. Kennelly , United States District Judge
Name and Title of Judge

8-5-2024
_____
Date

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                    (Note: Identify Changes with Asterisks (*)).
Sheet 2 – Imprisonment                                                                                          Judgment – Page 3 of 16

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:12-CR-00723(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Three hundred and Twenty-four (324) months as to count one (1) and two hundred and forty months (240) as to count 2 of the indictment.
The terms of imprisonment are to run concurrently with each other and are to run concurrently with the sentence imposed in the defendant's
other cases in the Northern District of Illinois; 1:13-cr-703 and 1:15-cr-487.

☒    The court makes the following recommendations to the Bureau of Prisons: Any costs of imprisonment are waived due to the

  defendant's inability to pay.

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

  ☐    at          on

  ☐    as notified by the United States Marshal.

  ☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐    before 2:00 pm on

  ☐    as notified by the United States Marshal.

  ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this
judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:12-CR-00723(1)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of: Life. This term of supervised release is to run concurrently with the supervised release imposed on the defendant's other cases in the Northern District of Illinois; 1:13-cr-703 and 1:15-cr-487. Any costs of supervised release are waived due to the defendant's inablity to pay.

The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall not commit another Federal, State, or local crime.

2. The defendant shall not unlawfully possess a controlled substance.

3. The defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions** — The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D);** and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall seek, and work conscientiously at, lawful employment or, if he is not gainfully employed, the defendant shall pursue conscientiously a course of study or vocational training that will equip him for employment.

2. The defendant shall not knowingly meet or communicate with any person whom he knows to be engaged, or planning to be engaged, in criminal activity and shall not: Any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in 8 U.S.C. §1189), or who are, or claim to be, involved with violent acts, or advocating for acts of violence; and, communicating with any persons who are located outside of the United States with the exception to family members and persons previously identified and approved by the Probation Office.

3. The defendant shall not possess a firearm, destructive device, or other dangerous weapon.

4. The defendant shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

5. The defendant shall not knowingly leave from the federal judicial district where he is being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

6. The defendant shall report to the probation office in the federal judicial district to which he is released within 72 hours of his release from imprisonment. The defendant shall thereafter report to the probation officer at reasonable times as directed by the court or a probation officer.

7. The defendant will permit a probation officer to visit him at any reasonable time at home or any location that the probation officer may enter by right or concept and will permit confiscation of contraband in plain view.

8. The defendant shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. The defendant shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                                (Note: Identify Changes with Asterisks (*))
Sheet 5 – Criminal Monetary Penalties — Judgment — Page 4 of 9

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:12-CR-00723(1)

9. The defendant shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

10. The defendant shall satisfy such other special conditions as ordered below.

11. The defendant shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. §1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified below:

**During the term of supervised release:**

1. The defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

2. The defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

3. The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

4. The defendant should attend violent extremism counseling from providers as directed by the Probation Office, and agreed to by the Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant, or upon order of the Court. The defendant shall also authorize the release of any mental health and/or violent extremism counseling records to the probation officer.

5. The defendant shall not possess or use at any location (including his place of employment), any external storage device without the prior approval of a probation officer.

6. The defendant shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. The defendant shall identify all computers to which he has access. The defendant shall consent to the installation of computer monitoring software on all computers to which he has access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. The defendant shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

7. The defendant shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

8. The defendant shall be required to submit to periodic polygraph testing at the direction of the probation office as a means to ensure that he is in compliance with the requirements of his supervision or treatment program.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties
(Note: Identify Changes with Asterisks (*))
Judgment – Page 5 of 9

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $200.00 | $.00 | $.00 | $.00 | $.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**. All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the _____.

  ☐ the interest requirement for the _____ is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                    (Note: Identify Changes with Asterisks (*))
Sheet 6 – Schedule of Payments                                                                    Judgment – Page 6 of 6

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**     ☒   Lump sum payment of $200 due immediately.

         ☐   balance due not later than       , or

         ☐   balance due in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**     ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**     ☐   Payment in equal     *(e.g. weekly, monthly, quarterly)* installments of $     over a period of     *(e.g., months or years)*, to
         commence     *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**     ☐   Payment in equal     *(e.g. weekly, monthly, quarterly)* installments of $     over a period of     *(e.g., months or years)*, to
         commence     *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**     ☐   Payment during the term of supervised release will commence within     *(e.g. 30 or 60 days)* after release from imprisonment.
         The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**     ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
|---|---|---|---|

**See above for Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# UNITED STATES DISTRICT COURT
### Northern District of Illinois

<table>
<tr><td>

UNITED STATES OF AMERICA

v.

ADEL DAOUD

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**JUDGMENT IN A CRIMINAL CASE**

Case Number:    1:12-CR-00723(1)

USM Number:    43222-424

Thomas Anthony Durkin and Joshua G. Herman
<span style="font-size:smaller">Defendant's Attorney</span>

</td></tr>
</table>

**THE DEFENDANT:**

☒ pleaded guilty to count(s) 1 (one) and 2 (two) of the Indictment.

☐ pleaded nolo contendere to count(s)     which was accepted by the court.

☐ was found guilty on count(s)     after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18:2332Aa.F Use Of Certain Weapons Of Mass Destruction | 09/14/2012 | 1 |
| 18:844I.F Penalties - If Death Results | 09/14/2012 | 2 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)    dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

May 6, 2019
Date of Imposition of Judgment

_____
Signature of Judge
Sharon Johnson Coleman, United States District Judge

Name and Title of Judge

5-20-2019
_____
Date

ILND 245B (Rev. 04/19/2019) Judgment in a Criminal Case
Sheet 2 – Imprisonment

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:12-CR-00723(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
192 months as to count 1 and 192 months as to count 2 of the Indictment. Terms to run concurrent to each other  and concurrent to the terms imposed in case 13 CR 703-1 and 15 CR 487-1.

☒        The court makes the following recommendations to the Bureau of Prisons: Defendant to serve his term of imprisonment at the

        Butner FCC facility or at the Pekin FCI facility.

☒        The defendant is remanded to the custody of the United States Marshal.

☐        The defendant shall surrender to the United States Marshal for this district:

        ☐     at     on

    ☐    as notified by the United States Marshal.

    ☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

        ☐    before 2:00 pm on

        ☐    as notified by the United States Marshal.

        ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this
judgment.

                              _____

                              UNITED STATES MARSHAL

                          By   _____

                                DEPUTY UNITED STATES MARSHAL

ILND 245D (Rev. 04/29/2019) Judgment in a Criminal Case for Revocation
Sheet 3 – Supervised Release

Judgment – Page 3 of 8

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of:
forty-five (45) years as to count 1 and 2 of the Indictment. Terms to run concurrent to each other and concurrent to the terms of supervised release imposed in cases 13 CR 703-1 and 15 CR 487-1

      You must report to the probation office in the district to which you are released within 72 hours of release from the custody of the Bureau of Prisons. You shall report to sentencing Judge or one sitting in her stead, on status to review conditions after review of medical/mental health record and conditions of MSR pursuant to 18 U.S.C. 3553(a). The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☒ (1)  you shall not commit another Federal, State, or local crime.

☒ (2)  you shall not unlawfully possess a controlled substance.

☐ (3)  you shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, if an approved program is readily available within a 50-mile radius of your legal residence.  [Use for a first conviction of a domestic violence crime, as defined in § 3561(b).]

☐ (4)  you shall register and comply with all requirements of the Sex Offender Registration and Notification Act **(42 U.S.C. § 16913)**.

☒ (5)  you shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

☐ (6)  you shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release.  [This mandatory condition may be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse by the defendant.]

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions —** The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D);** and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☐ (1)  you shall provide financial support to any dependents if you are financially able to do so.

☐ (2)  you shall make restitution to a victim of the offense under **§ 3556** (but not subject to the limitation of **§ 3663(a)** or **§ 3663A(c)(1)(A))**.

☐ (3)  you shall give to the victims of the offense notice pursuant to the provisions of **§ 3555**, as follows: ▨

☒ (4)  you shall seek, and work conscientiously at, lawful employment or, if you are not gainfully employed, you shall pursue conscientiously a course of study or vocational training that will equip you for employment.

☐ (5)  you shall refrain from engaging in the following occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in the following specified occupation, business, or profession only to a stated degree or under stated circumstances; (if checked yes, please indicate restriction(s)) ▨ .

☒ (6)  you shall not knowingly meet or communicate with any person whom you know to be engaged, or planning to be engaged, in criminal activity and shall not:

    ☐  visit the following type of places: ▨ .

    ☒  knowingly meet or communicate with the following persons: Any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in 8 U. S. C. 1189) , or who are, or claim to be, involved with violent acts, or advocating for acts of violence; and, communicating with any persons who are located outside of the United States with the exception to family members and persons who are located outside of the United States with the exception to family members and persons previously identified and approved by the Probation Office.

☐ (7)  you shall refrain from ☐ any or ☐ excessive use of alcohol (defined as ☐ having a blood alcohol concentration greater than 0.08; or ☐     ), and from any use of a narcotic drug or other controlled substance, as defined in **§ 102** of the Controlled Substances Act (**21 U.S.C. § 802**), without a prescription by a licensed medical practitioner.

☒ (8)  you shall not possess a firearm, destructive device, or other dangerous weapon.

ILND 245D (Rev. 04/29/2019) Judgment in a Criminal Case for Revocation
Sheet 3 – Supervised Release

Judgment – Page 4 of 8

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

☒  (9)  ☐  you shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.
        ☒  you shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider
        ☐  you shall participate, at the direction of a probation officer, in medical care; (if checked yes, please specify: ▩.)

☐  (10)  (intermittent confinement): you shall remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling ▩ [no more than the lesser of one year or the term of imprisonment authorized for the offense], during the first year of the term of supervised release (provided, however, that a condition set forth in §3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with § 3583(e)(2) and only when facilities are available) for the following period ▩.

☐  (11)  (community confinement): you shall reside at, or participate in the program of a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of supervised release, for a period of ▩ months.

☐  (12)  you shall work in community service for ▩ hours as directed by a probation officer.
☐  (13)  you shall reside in the following place or area: ▩, or refrain from residing in a specified place or area: ▩.
☒  (14)  you shall refrain from knowingly leaving the federal judicial district where you are being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.
☒  (15)  you shall report to a probation officer as directed by the court or a probation officer.
☒  (16)  ☒  you shall permit a probation officer to visit you ☒ at any reasonable time or ☐ as specified: ,
        ☒ at home  ☒ at work  ☒ at school  ☒ at a community service location
        ☒ other reasonable location specified by a probation officer (excluding inside place of worship)
        ☒  you shall permit confiscation of any contraband observed in plain view of the probation officer.
☒  (17)  you shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. You shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.
☒  (18)  you shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.
☐  (19)  (home confinement)
        ☐  (a)(i) (home incarceration) for a period of __ months, you are restricted to your residence at all times except for medical necessities and court appearances or other activities specifically approved by the court.
        ☐  (a)(ii) (home detention) for a period of __ months, you are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the probation officer.
        ☐  (a)(iii) (curfew) for a period of __ months, you are restricted to your residence every day.
        ☐  from the times directed by the probation officer; or ☐ from __ to __.
        ☐  (b) your compliance with this condition, as well as other court-imposed conditions of supervision, shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and you shall abide by all technology requirements.
        ☐  (c) you shall pay all or part of the cost of the location monitoring, at the daily contractual rate, if you are financially able to do so.
☐  (20)  you shall comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by you for the support and maintenance of a child or of a child and the parent with whom the child is living.
☐  (21)  (deportation): you shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, you shall not remain in or enter the United States without obtaining, in advance, the express written consent of the United States Attorney General or the United States Secretary of the Department of Homeland Security.
☒  (22)  you shall satisfy such other special conditions as ordered below.

Case: 1:12-cr-00723 Document #: 586 Filed: 06/08/24 Page 1 of 24 PageID #:3601
Case: 24-2370    Document: 41-2    RESTRICTED    Filed: 12/03/2025    Pages: (612 of 159)
ILND 245D (Rev. 04/29/2019) Judgment in a Criminal Case for Revocation
Sheet 3 – Supervised Release

Judgment – Page 5 of 8

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

☒   (23)   You shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. 1030(e)(1)),
           other electronic communications or data storage devices or media,] or office, to a search conducted by a United States
           Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. You shall warn any other
           occupants that the premises may be subject to searches pursuant to this condition.
☐   (24)   Other:

**SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)**
The court imposes those conditions identified by checkmarks below:

**During the term of supervised release:**

☐   (1)   if you have not obtained a high school diploma or equivalent, you shall participate in a General Educational
          Development (GED) preparation course and seek to obtain a GED within the first year of supervision.
☒   (2)   you shall participate in an approved job skill-training program at the direction of a probation officer within the first 60
          days of placement on supervision.
☐   (3)   you shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off
          from employment, perform at least ▨▨ hours of community service per week at the direction of the probation office
          until gainfully employed. The total amount of community service required over your term of service shall not exceed
          ▨▨ hours.
☐   (4)   you shall not maintain employment where you have access to other individual's personal information, including, but not
          limited to, Social Security numbers and credit card numbers (or money) unless approved by a probation officer.
☐   (5)   you shall not incur new credit charges or open additional lines of credit without the approval of a probation officer
          unless you are in compliance with the financial obligations imposed by this judgment.
☒   (6)   you shall provide a probation officer with access to any requested financial information requested by the probation
          officer to monitor compliance with conditions of supervised release.
☐   (7)   within 72 hours of any significant change in your economic circumstances that might affect your ability to pay
          restitution, fines, or special assessments, you must notify the probation officer of the change.
☐   (8)   you shall file accurate income tax returns and pay all taxes, interest, and penalties as required by law.
☐   (9)   you shall participate in a sex offender treatment program. The specific program and provider will be determined by a
          probation officer. You shall comply with all recommended treatment which may include psychological and
          physiological testing. You shall maintain use of all prescribed medications.
          ☐   You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the
              United States Probation Office. You shall consent to the installation of computer monitoring software on all
              identified computers to which you have access and to which the probation officer has legitimate access by right or
              consent. The software may restrict and/or record any and all activity on the computer, including the capture of
              keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice
              will be placed on the computer at the time of installation to warn others of the existence of the monitoring
              software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.
          ☐   The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject
              to satisfaction of other financial obligations imposed by this judgment.
          ☐   You shall not possess or use at any location (including your place of employment), any computer, external storage
              device, or any device with access to the Internet or any online computer service without the prior approval of a
              probation officer. This includes any Internet service provider, bulletin board system, or any other public or private
              network or email system
          ☐   You shall not possess any device that could be used for covert photography without the prior approval of a
              probation officer.
          ☐   You shall not view or possess child pornography. If the treatment provider determines that exposure to other
              sexually stimulating material may be detrimental to the treatment process, or that additional conditions are likely
              to assist the treatment process, such proposed conditions shall be promptly presented to the court, for a
              determination, pursuant to **18 U.S.C. § 3583(e)(2),** regarding whether to enlarge or otherwise modify the
              conditions of supervision to include conditions consistent with the recommendations of the treatment provider.

ILND 245D (Rev. 04/29/2019) Judgment in a Criminal Case for Revocation
Sheet 3 -- Supervised Release
Judgment – Page 6 of 8

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

☐    You shall not, without the approval of a probation officer and treatment provider, engage in activities that will put you in unsupervised private contact with any person under the age of 18, and you shall not knowingly visit locations where persons under the age of 18 regularly congregate, including parks, schools, school bus stops, playgrounds, and childcare facilities. This condition does not apply to contact in the course of normal commercial business or unintentional incidental contact

☐    This condition does not apply to your family members: [blank] [Names]

☐    Your employment shall be restricted to the judicial district and division where you reside or are supervised, unless approval is granted by a probation officer.  Prior to accepting any form of employment, you shall seek the approval of a probation officer, in order to allow the probation officer the opportunity to assess the level of risk to the community you will pose if employed in a particular capacity.  You shall not participate in any volunteer activity that may cause you to come into direct contact with children except under circumstances approved in advance by a probation officer and treatment provider.

☐    You shall provide the probation officer with copies of your telephone bills, all credit card statements/receipts, and any other financial information requested.

☐    You shall comply with all state and local laws pertaining to convicted sex offenders, including such laws that impose restrictions beyond those set forth in this order.

☐    (10)    you shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of your gross earnings minus federal and state income tax withholdings.

☒    (11)    you shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the prior permission of the court.

☐    (12)    you shall pay to the Clerk of the Court $ [blank] as repayment to the United States of government funds you received during the investigation of this offense. (The Clerk of the Court shall remit the funds to [blank] (list both Agency and Address.)

☐    (13)    You shall observe one Reentry Court session, as instructed by your probation officer.

☒    (14)    Other: [blank]  You shall attend violent extremism counseling from providers as directed by the Probation Office, and agreed to by the Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant, or upon order of the Court. The defendant shall also authorize the release of any mental health and/or violent extremism counseling records to the probation officer.

You shall not possess or use at any location (including your place of employment), any external storage device without the prior approval of a probation officer.

You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall identify all computers to which you have access. You shall consent to the installation of computer monitoring software on all computers to which you have access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

You shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

You shall be required to submit to periodic polygraph testing at the direction of the probation office as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

ILND 245B (Rev. 04/19/2019) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $200.00 | $.00 | Waived | $.00 |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

☐  Restitution amount ordered pursuant to plea agreement $_____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f).**  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g).**

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the _____ .

☐  the interest requirement for the _____ is modified as follows:

☐  The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
* Findings for the total amount of losses are required under **Chapters 109A, 110, 110A, and 113A of Title 18** for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245B (Rev. 04/19/2019) Judgment in a Criminal Case
Sheet 7 - Denial of Federal Benefits

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:12-CR-00723(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒ Lump sum payment of $200.00 due immediately.

    ☐ balance due not later than     , or

    ☐ balance due in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal     *(e.g. weekly, monthly, quarterly)* installments of $      over a period of      *(e.g., months or years)*, to commence      *(e.g. 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal     *(e.g. weekly, monthly, quarterly)* installments of $      over a period of      *(e.g., months or years)*, to commence      *(e.g. 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within      *(e.g. 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if Appropriate |
|---|---|---|---|

**See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Case: 1:13-cr-00703 Document #: 257 Filed: 08/08/24 Page 1 of 12 PageID #:2386
ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case            (Note: Identify Changes with Asterisks (*))
Sheet 1      Case: 24-2370     Document: 41-2     RESTRICTED     Filed: 12/03/2025     Pages: 6 (116 of 159)

# UNITED STATES DISTRICT COURT
## Northern District of Illinois

UNITED STATES OF AMERICA

**v.**

ADEL DAOUD

**Date of Original Judgment: 8/5/2024**
**(Or Date of Last Amended Judgment)**

**Reason for Amendment:**

☒ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

**SECOND AMENDED JUDGMENT IN A CRIMINAL CASE**

Case Number:    1:13-CR-00703(1)

USM Number:    43222-424

Defendant's Attorney

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or ☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

## THE DEFENDANT:

☒ pleaded guilty to count(s) one (1), two (2), and three (3) of the Indictment.

☐ pleaded nolo contendere to count(s)       which was accepted by the court.

☐ was found guilty on count(s)       after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. §373(a) Solicitation to Commit a Crime of Violence | 11/29/2012 | 1 |
| *18 U.S.C. §1958(a) Use of Interstate Commerce Facility in Commission of Murder-For-Hire | 11/28/2012 | 2 |
| 18 U.S.C. §1512(a)(1)(A) Obstruction of Justice by Attempt to Kill Witness | 11/29/2012 | 3 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984. **Other than the amendments or modifications stated in this judgment, the judgment previously entered shall stand. (See attachments)**

☐ The defendant has been found not guilty on count(s)

☐ Count(s) «dismissd_counts» dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 5, 2024
Date of Imposition of Judgment

Signature of Judge

Matthew F. Kennelly , United States District Judge
Name and Title of Judge

8-8-2024
Date

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                          (Note: Identify Changes with Asterisks (*))
Sheet 2 – Imprisonment                                                                              Judgment – Page 2 of 12

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:13-CR-00703(1)

# *IMPRISONMENT*

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
One hundred and twenty (120) months as to counts one (1) and two (2). The counts are to run concurrently with each other. Three
hundred and twenty-four (324) months as to count 3. Count three (3) is to run concurrently with counts one (1) and two (2), and are to
run concurrently with the sentence imposed in the defendant's other cases in the Northern District of Illinois; 1:12-cr-723 and 1:15-
cr-487.

☒     The court makes the following recommendations to the Bureau of Prisons: Any costs of imprisonment are waived due to the

       defendant's inability to pay.

☒     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district:

       ☐     at          on

☐     as notified by the United States Marshal.

☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

       ☐     before 2:00 pm on

       ☐     as notified by the United States Marshal.

       ☐     as notified by the Probation or Pretrial Services Office.


# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this
judgment.


                                                    _____
                                                    UNITED STATES MARSHAL


                                              By    _____
                                                    DEPUTY UNITED STATES MARSHAL

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:13-CR-00703(1)

# MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of: Three (3) years as to counts one (1) and two (2) and five (5) years as to count three (3). This term of supervised release is to run concurrently with the supervised release imposed on the defendant's other cases in the Northern District of Illinois; 1:12-cr-723 and 1:15-cr-487. Any costs of supervised release are waived due to the defendant's inablity to pay.

The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall not commit another Federal, State, or local crime.

2. The defendant shall not unlawfully possess a controlled substance.

3. The defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

# *DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)*

**Discretionary Conditions —** The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D)**; and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall seek, and work conscientiously at, lawful employment or, if he is not gainfully employed, the defendant shall pursue conscientiously a course of study or vocational training that will equip him for employment.

*2. The defendant shall not knowingly meet or communicate with any person whom he knows to be engaged, or planning to be engaged, in criminal activity and shall not knowingly meet or communicate with the following persons: Any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in 8 U.S.C. §1189), or who are, or claim to be, involved with violent acts, or advocating for acts of violence; and, communicating with any persons who are located outside of the United States with the exception to family members and persons previously identified and approved by the Probation Office.

3. The defendant shall not possess a firearm, destructive device, or other dangerous weapon.

4. The defendant shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

5. The defendant shall not knowingly leave from the federal judicial district where he is being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

6. The defendant shall report to the probation office in the federal judicial district to which he is released within 72 hours of his release from imprisonment. The defendant shall thereafter report to the probation officer at reasonable times as directed by the court or a probation officer.

7. The defendant will permit a probation officer to visit him at any reasonable time at home or any location that the probation officer may enter by right or concept and will permit confiscation of contraband in plain view.

8. The defendant shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. The defendant shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:13-CR-00703(1)

9. The defendant shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

10. The defendant shall satisfy such other special conditions as ordered below.

11. The defendant shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. §1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified below:

**During the term of supervised release:**

1. The defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

2. The defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

3. The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

4. The defendant should attend violent extremism counseling from providers as directed by the Probation Office, and agreed to by the Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant, or upon order of the Court. The defendant shall also authorize the release of any mental health and/or violent extremism counseling records to the probation officer.

5. The defendant shall not possess or use at any location (including his place of employment), any external storage device without the prior approval of a probation officer.

6. The defendant shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. The defendant shall identify all computers to which he has access. The defendant shall consent to the installation of computer monitoring software on all computers to which he has access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. The defendant shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

7. The defendant shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

8. The defendant shall be required to submit to periodic polygraph testing at the direction of the probation office as a means to ensure that he is in compliance with the requirements of his supervision or treatment program.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case (Note: Identify Changes with Asterisks (*))
Sheet 5 – Criminal Monetary Penalties

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:13-CR-00703(1)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $300.00 | $.00 | $.00 | $.00 | $.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

☐ Restitution amount ordered pursuant to plea agreement $_____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**. All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the _____ .

    ☐ the interest requirement for the _____ is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                    (Note: Identify Changes with Asterisks (*))
Sheet 6 – Schedule of Payments

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:13-CR-00703(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☒ Lump sum payment of $300 due immediately.

☐ balance due not later than          , or

☐ balance due in accordance with    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B ☐ Payment to begin immediately (may be combined with    ☐ C,   ☐ D, or    ☐ F below); or

C ☐ Payment in equal        (*e.g. weekly, monthly, quarterly*) installments of $        over a period of        (*e.g., months or years*), to commence       (*e.g., 30 or 60 days*) after the date of this judgment; or

D ☐ Payment in equal        (*e.g. weekly, monthly, quarterly*) installments of $        over a period of        (*e.g., months or years*), to commence       (*e.g., 30 or 60 days*) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within        (*e.g., 30 or 60 days*) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if Appropriate |
|---|---|---|---|

**See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# UNITED STATES DISTRICT COURT

Northern District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| | ) |
| ADEL DAOUD | ) Case Number:     1:13-CR-00703(1) |
| | ) |
| | ) USM Number:     43222-424 |
| | ) |
| | ) |
| | ) |
| | ) Defendant's Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count(s) one (1), two (2), and three (3) of the Indictment.

☐ pleaded nolo contendere to count(s)     which was accepted by the court.

☐ was found guilty on count(s)     after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section / Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|
| 18 U.S.C. §373(a) Solicitation to Commit a Crime of Violence | 11/29/2012 | 1 |
| 18 U.S.C. §1958(a) Use of Interstate Commerce Facility in Commission of Murder-For-Hire | 11/29/2012 | 2 |
| 18 U.S.C. §1512(a)(1)(A) Obstruction of Justice by Attempt to Kill Witness | 11/29/2012 | 3 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

July 19, 2024
Date of Imposition of Judgment

Signature of Judge
Matthew F. Kennelly, United States District Judge

Name and Title of Judge

7-30-2024
Date

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 2 – Imprisonment

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:13-CR-00703(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
One hundred and twenty (120) months as to counts one (1) and two (2). The counts are to run concurrently with each other. Three hundred and twenty-four (324) months as to count 3. Count three (3) is to run concurrently with the sentence imposed in the defendant's other cases in the Northern District of Illinois; 1:12-cr-723 and 1:15-cr-487.

☒     The court makes the following recommendations to the Bureau of Prisons: Any costs of imprisonment are waived due to the

defendant's inability to pay.

☒     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district:

    ☐     at          on

    ☐     as notified by the United States Marshal.

    ☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

        ☐     before 2:00 pm on

        ☐     as notified by the United States Marshal.

        ☐     as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case: 1:13-cr-00703 Document #: 2547 Filed: 08/30/24 Page 9 of 62 PageID #:22864
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 3 – Supervised Release
Case: 24-2370     Document: 41-2     RESTRICTED     Filed: 12/03/2025     Pages: 624 of 159
Judgment - Page 3 of 35

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:13-CR-00703(1)

# MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of: Three (3) years as to counts one (1) and two (2) and five (5) years as to count three (3). This term of supervised release is to run concurrently with the supervised release imposed on the defendant's other cases in the Northern District of Illinois; 1:12-cr-723 and 1:15-cr-487. Any costs of supervised release are waived due to the defendant's inablity to pay.

The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

1. The defendant shall not commit another Federal, State, or local crime.

2. The defendant shall not unlawfully possess a controlled substance.

3. The defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

# DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions —** The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D);** and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall seek, and work conscientiously at, lawful employment or, if he is not gainfully employed, the defendant shall pursue conscientiously a course of study or vocational training that will equip him for employment.

2. The defendant shall not knowingly meet or communicate with any person whom he knows to be engaged, or planning to be engaged, in criminal activity and shall not: Any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in 8 U.S.C. §1189), or who are, or claim to be, involved with violent acts, or advocating for acts of violence; and, communicating with any persons who are located outside of the United States with the exception to family members and persons previously identified and approved by the Probation Office.

3. The defendant shall not possess a firearm, destructive device, or other dangerous weapon.

4. The defendant shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

5. The defendant shall not knowingly leave from the federal judicial district where he is being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

6. The defendant shall report to the probation office in the federal judicial district to which he is released within 72 hours of his release from imprisonment. The defendant shall thereafter report to the probation officer at reasonable times as directed by the court or a probation officer.

7. The defendant will permit a probation officer to visit him at any reasonable time at home or any location that the probation officer may enter by right or concept and will permit confiscation of contraband in plain view.

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:13-CR-00703(1)

8. The defendant shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. The defendant shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

9. The defendant shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

10. The defendant shall satisfy such other special conditions as ordered below.

11. The defendant shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. §1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified below:

**During the term of supervised release:**

1. The defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

2. The defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

3. The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

4. The defendant should attend violent extremism counseling from providers as directed by the Probation Office, and agreed to by the Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant, or upon order of the Court. The defendant shall also authorize the release of any mental health and/or violent extremism counseling records to the probation officer.

5. The defendant shall not possess or use at any location (including his place of employment), any external storage device without the prior approval of a probation officer.

6. The defendant shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. The defendant shall identify all computers to which he has access. The defendant shall consent to the installation of computer monitoring software on all computers to which he has access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. The defendant shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

7. The defendant shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

8. The defendant shall be required to submit to periodic polygraph testing at the direction of the probation office as a means to ensure that he is in compliance with the requirements of his supervision or treatment program.

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:13-CR-00703(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $300.00 | $.00 | $.00 | $.00 | $.00 |

☐ The determination of restitution is deferred until              . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**. All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐  the interest requirement is waived for the         .

   ☐  the interest requirement for the         is modified as follows:

☐ The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment - Page 6 of 6

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:13-CR-00703(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**   ☒   Lump sum payment of $300 due immediately.

       ☐   balance due not later than        , or

       ☐   balance due in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B**   ☐   Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C**   ☐   Payment in equal      (*e.g. weekly, monthly, quarterly*) installments of $    over a period of     (*e.g., months or years*), to commence     (*e.g., 30 or 60 days*) after the date of this judgment; or

**D**   ☐   Payment in equal      (*e.g. weekly, monthly, quarterly*) installments of $    over a period of     (*e.g., months or years*), to commence     (*e.g., 30 or 60 days*) after release from imprisonment to a term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within     (*e.g., 30 or 60 days*) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if Appropriate |
|---|---|---|---|
| | | | |

**See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Case: 1:15-cr-00487 Document #: 269 Filed: 08/08/24 Page 1 of 20 PageID #:2235

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                    (Note: Identify Changes with Asterisks (*))
Sheet 1                    Case: 24-2370        Document: 41-2        RESTRICTED        Filed: 12/03/2025        Pages: 6 (128 of 159)

# UNITED STATES DISTRICT COURT
Northern District of Illinois

UNITED STATES OF AMERICA

v.

ADEL DAOUD

**Date of Original Judgment: 8/5/2024**
**(Or Date of Last Amended Judgment)**

**Reason for Amendment:**

☒ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

**SECOND AMENDED JUDGMENT IN A CRIMINAL CASE**

Case Number:      1:15-CR-00487(1)

USM Number:      43222-424

Quinn Alexandra Michaelis
Defendant's Attorney

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or ☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

☒ pleaded guilty to count(s) one (1), two (2), three (3), four (4), and five (5) of the indictment.

☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.

☐ was found guilty on count(s) _____ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. §113(a)(1) Assault with Intent to Commit Murder | 05/23/2015 | 1 |
| 18 U.S.C. §113(a)(3) Assault with Dangerous Weapon with Intent to Do Bodily Harm | 05/23/2015 | 2 |
| 18 U.S.C. §113(a)(6) Assault Resulting in Serious Bodily Injury | 05/23/2015 | 3 |
| 18 U.S.C. §1791(a)(2) and 18 U.S.C. §1791(b)(3) Make and Possess Prohibited Weapon | 05/23/2015 | 4 |
| *18 U.S.C. §113(a)(4) Assault | 12/29/2014 | 5 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984. **Other than the amendments or modifications stated in this judgment, the judgment previously entered shall stand. (See attachments)**

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) «dismissd_counts» dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 5, 2024
Date of Imposition of Judgment

_____
Signature of Judge

Matthew F. Kennelly , United States District Judge
Name and Title of Judge

8-8-2024
Date

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                        (Note: Identify Changes with Asterisks (*)).
Sheet 2 – Imprisonment                                                                 Judgment - Page 2 of 9

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Two hundred and forty (240) months as to count one (1) of the indictment; one hundred and twenty (120) months as to counts two (2) and three (3) of the indictment; sixty (60) months as to count four (4) of the indictment; and twelve (12) months as to count five (5) of the indictment. All of the terms of imprisonment are to run concurrently with one another and with the sentences imposed in the defendant's other cases in the Northern District of Illinois; 1:12-cr-723 and 1:13-cr-703.

☒     The court makes the following recommendations to the Bureau of Prisons: Any costs of imprisonment are waived due to the

        defendant's inability to pay.

☒     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district:

        ☐     at          on

      ☐     as notified by the United States Marshal.

      ☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

        ☐     before 2:00 pm on

        ☐     as notified by the United States Marshal.

        ☐     as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this
judgment.

                                                    _____
                                                    UNITED STATES MARSHAL


                                            By    _____
                                                    DEPUTY UNITED STATES MARSHAL

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:15-CR-00487(1)


# MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)


Upon release from imprisonment, you shall be on supervised release for a term of: Three (3) years as to counts one (1), two (2), three (3), and four (4) of the indictment. One (1) year as to count five (5) of the indictment. The terms of supervised release are to run concurrently with one another and with the supervised release imposed on the defendant's other cases in the Northern District of Illinois; 1:12-cr-723 and 1:13-cr-703. Any costs of supervised release are waived due to the defendant's inablity to pay.

      The court imposes those conditions identified below:


**During the period of supervised release:**

1. The defendant shall not commit another Federal, State, or local crime.

2. The defendant shall not unlawfully possess a controlled substance.

3. The defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.


# *DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)*

**Discretionary Conditions —** The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D)**; and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall seek, and work conscientiously at, lawful employment or, if he is not gainfully employed, the defendant shall pursue conscientiously a course of study or vocational training that will equip him for employment.

*2. The defendant shall not knowingly meet or communicate with any person whom he knows to be engaged, or planning to be engaged, in criminal activity and shall not knowingly meet or communicate with the following persons: Any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in 8 U.S.C. §1189), or who are, or claim to be, involved with violent acts, or advocating for acts of violence; and, communicating with any persons who are located outside of the United States with the exception to family members and persons previously identified and approved by the Probation Office.

3. The defendant shall not possess a firearm, destructive device, or other dangerous weapon.

4. The defendant shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

5. The defendant shall not knowingly leave from the federal judicial district where he is being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

6. The defendant shall report to the probation office in the federal judicial district to which he is released within 72 hours of his release from imprisonment. The defendant shall thereafter report to the probation officer at reasonable times as directed by the court or a probation officer.

7. The defendant will permit a probation officer to visit him at any reasonable time at home or any location that the probation officer may enter by right or concept and will permit confiscation of contraband in plain view.

8. The defendant shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. The defendant shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:15-CR-00487(1)

9. The defendant shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

10. The defendant shall satisfy such other special conditions as ordered below.

11. The defendant shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. §1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified below:

**During the term of supervised release:**

1. The defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

2. The defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

3. The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

4. The defendant should attend violent extremism counseling from providers as directed by the Probation Office, and agreed to by the Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant, or upon order of the Court. The defendant shall also authorize the release of any mental health and/or violent extremism counseling records to the probation officer.

5. The defendant shall not possess or use at any location (including his place of employment), any external storage device without the prior approval of a probation officer.

6. The defendant shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. The defendant shall identify all computers to which he has access. The defendant shall consent to the installation of computer monitoring software on all computers to which he has access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. The defendant shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

7. The defendant shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

8. The defendant shall be required to submit to periodic polygraph testing at the direction of the probation office as a means to ensure that he is in compliance with the requirements of his supervision or treatment program.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                    (Note: Identify Changes with Asterisks (*))
Sheet 5 – Criminal Monetary Penalties                                                                                        Judgment – Page 5 of 20

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:15-CR-00487(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $425.00 | $.00 | $.00 | $.00 | $.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**. All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the _____ .

☐ the interest requirement for the _____ is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case          (Note: Identify Changes with Asterisks (*)).
Sheet 6 – Schedule of Payments

Judgment — Page 6 of 20

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**    ☒   Lump sum payment of $425 due immediately.

           ☐   balance due not later than       , or

           ☐   balance due in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**    ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**    ☐   Payment in equal     *(e.g. weekly, monthly, quarterly)* installments of $    over a period of    *(e.g., months or years)*, to commence    *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**    ☐   Payment in equal     *(e.g. weekly, monthly, quarterly)* installments of $    over a period of    *(e.g., months or years)*, to commence    *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**    ☐   Payment during the term of supervised release will commence within    *(e.g. 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
|---|---|---|---|

**See above for Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Case: 1:15-cr-00487 Document #: 260 Filed: 08/08/24 Page 1 of 20 PageID #:2089
ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case          (Note: Identify Changes with Asterisks (*))
Sheet 1
Case: 24-2370      Document: 41-2      RESTRICTED      Filed: 12/03/2025      Pages: 6 (134 of 159)

# UNITED STATES DISTRICT COURT
### Northern District of Illinois

UNITED STATES OF AMERICA

     **v.**

ADEL DAOUD

**Date of Original Judgment: 5/20/2019**
**(Or Date of Last Amended Judgment)**

**Reason for Amendment:**

☒ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

## AMENDED JUDGMENT IN A CRIMINAL CASE

Case Number:   1:15-CR-00487(1)

USM Number:   43222-424

Quinn Alexandra Michaelis
Defendant's Attorney

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or ☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

## THE DEFENDANT:

☒ pleaded guilty to count(s) one (1), two (2), three (3), four (4), and five (5) of the indictment.

☐ pleaded nolo contendere to count(s)     which was accepted by the court.

☐ was found guilty on count(s)     after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. §113(a)(1) Assault with Intent to Commit Murder | 05/23/2015 | 1 |
| 18 U.S.C. §113(a)(3) Assault with Dangerous Weapon with Intent to Do Bodily Harm | 05/23/2015 | 2 |
| 18 U.S.C. §113(a)(6) Assault Resulting in Serious Bodily Injury | 05/23/2015 | 3 |
| 18 U.S.C. §1791(a)(2) and 18 U.S.C. §1791(b)(3) Make and Possess Prohibited Weapon | 05/23/2015 | 4 |
| 18 U.S.C. §113(a)(4) Assault | 05/23/2015 | 5 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984. **Other than the amendments or modifications stated in this judgment, the judgment previously entered shall stand. (See attachments)**

☐ The defendant has been found not guilty on count(s)

☐ Count(s) «dismissd_counts» dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 5, 2024
Date of Imposition of Judgment

Signature of Judge

Matthew F. Kennelly , United States District Judge
Name and Title of Judge

8-5-2024
Date

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                    (Note: Identify Changes with Asterisks (*))
Sheet 2 – Imprisonment                                                                                            Judgment – Page 2 of 9

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:15-CR-00487(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Two hundred and forty (240) months as to count one (1) of the indictment; one hundred and twenty (120) months as to counts two (2) and
three (3) of the indictment; sixty (60) months as to count four (4) of the indictment; and twelve (12) months as to count five (5) of the
indictment. All of the terms of imprisonment are to run concurrently with one another and with the sentences imposed in the defendant's
other cases in the Northern District of Illinois; 1:12-cr-723 and 1:13-cr-703.

☒      The court makes the following recommendations to the Bureau of Prisons: Any costs of imprisonment are waived due to the

    defendant's inability to pay.

☒      The defendant is remanded to the custody of the United States Marshal.

☐      The defendant shall surrender to the United States Marshal for this district:

      ☐      at          on

    ☐      as notified by the United States Marshal.

    ☐      The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

      ☐      before 2:00 pm on

      ☐      as notified by the United States Marshal.

      ☐      as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this
judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case (Note: Identify Changes with Asterisks (*))
Sheet 3 — Supervised Release

Case: 24-2370     Document: 41-2     RESTRICTED     Filed: 12/03/2025     Pages: 160 (136 of 159)

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:15-CR-00487(1)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of: Three (3) years as to counts one (1), two (2), three (3), and four (4) of the indictment. One (1) year as to count five (5) of the indictment. The terms of supervised release are to run concurrently with one another and with the supervised release imposed on the defendant's other cases in the Northern District of Illinois; 1:12-cr-723 and 1:13-cr-703. Any costs of supervised release are waived due to the defendant's inablity to pay.

 The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall not commit another Federal, State, or local crime.

2. The defendant shall not unlawfully possess a controlled substance.

3. The defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions —** The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D)**; and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified below:

**During the period of supervised release:**

1. The defendant shall seek, and work conscientiously at, lawful employment or, if he is not gainfully employed, the defendant shall pursue conscientiously a course of study or vocational training that will equip him for employment.

2. The defendant shall not knowingly meet or communicate with any person whom he knows to be engaged, or planning to be engaged, in criminal activity and shall not: Any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in 8 U.S.C. §1189), or who are, or claim to be, involved with violent acts, or advocating for acts of violence; and, communicating with any persons who are located outside of the United States with the exception to family members and persons previously identified and approved by the Probation Office.

3. The defendant shall not possess a firearm, destructive device, or other dangerous weapon.

4. The defendant shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

5. The defendant shall not knowingly leave from the federal judicial district where he is being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

6. The defendant shall report to the probation office in the federal judicial district to which he is released within 72 hours of his release from imprisonment. The defendant shall thereafter report to the probation officer at reasonable times as directed by the court or a probation officer.

7. The defendant will permit a probation officer to visit him at any reasonable time at home or any location that the probation officer may enter by right or concept and will permit confiscation of contraband in plain view.

8. The defendant shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. The defendant shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

Case: 1:15-cr-00487 Document #: 2630 Filed: 08/05/24 Page 1 of 20 PageID #:20324
ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                              (Note: Identify Changes with Asterisks (*))
Sheet 3 – Supervised Release
Case: 24-2370        Document: 41-2        RESTRICTED        Filed: 12/03/2025        Pages: 667 (157 of 159)
Judgment - Page 4 of 9

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:15-CR-00487(1)

9. The defendant shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

10. The defendant shall satisfy such other special conditions as ordered below.

11. The defendant shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. §1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.


## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified below:

**During the term of supervised release:**

1. The defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

2. The defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

3. The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

4. The defendant should attend violent extremism counseling from providers as directed by the Probation Office, and agreed to by the Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant, or upon order of the Court. The defendant shall also authorize the release of any mental health and/or violent extremism counseling records to the probation officer.

5. The defendant shall not possess or use at any location (including his place of employment), any external storage device without the prior approval of a probation officer.

6. The defendant shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. The defendant shall identify all computers to which he has access. The defendant shall consent to the installation of computer monitoring software on all computers to which he has access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. The defendant shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

7. The defendant shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

8. The defendant shall be required to submit to periodic polygraph testing at the direction of the probation office as a means to ensure that he is in compliance with the requirements of his supervision or treatment program.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                    (Note: Identify Changes with Asterisks (*))
Sheet 5 – Criminal Monetary Penalties                                                                        Judgment – Page 5 of 9

DEFENDANT:  ADEL DAOUD
CASE NUMBER:  1:15-CR-00487(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $425.00 | $.00 | $.00 | $.00 | $.00 |

☐   The determination of restitution is deferred until      . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

   If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

     ☐   Restitution amount ordered pursuant to plea agreement $

     ☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**.  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

     ☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

          ☐   the interest requirement is waived for the      .

          ☐   the interest requirement for the      is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245C (Rev. 03/12/2020) Amended Judgment in a Criminal Case                                    (Note: Identify Changes with Asterisks (*))
Sheet 6 – Schedule of Payments                                                                      Judgment – Page 6 of 8

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**    ☒  Lump sum payment of $425 due immediately.

        ☐  balance due not later than          , or

        ☐  balance due in accordance with    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**    ☐  Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

**C**    ☐  Payment in equal          *(e.g. weekly, monthly, quarterly)* installments of $          over a period of          *(e.g., months or years)*, to
        commence          *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**    ☐  Payment in equal          *(e.g. weekly, monthly, quarterly)* installments of $          over a period of          *(e.g., months or years)*, to
        commence          *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**    ☐  Payment during the term of supervised release will commence within          *(e.g. 30 or 60 days)* after release from imprisonment.
        The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
|---|---|---|---|

**See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# UNITED STATES DISTRICT COURT
### Northern District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA | )  **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) |
| | ) |
| ADEL DAOUD | )  Case Number:    1:15-CR-00487(1) |
| | ) |
| | )  USM Number:    43222-424 |
| | ) |
| | ) |
| | )  Thomas Anthony Durkin and Joshua G. Herman |
| | )  Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s) 1 (one), 2 (two), 3 (three), 4 (four) and 5 (five) of the Indictment.

☐ pleaded nolo contendere to count(s)    which was accepted by the court.

☐ was found guilty on count(s)    after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18:113A.F Assault With Intent To Murder (Maritime) | 05/23/2015 | 1 |
| 18:113A.F Assault With Intent To Murder (Maritime) | 05/23/2015 | 2 |
| 18:113G.F Assault Resulting In Substantial Bodily Injury | 05/23/2015 | 3 |
| 18:1791A.P Contraband In Prison - Other Items | 05/23/2015 | 4 |
| 18:113C.F Assault Within Maritime And/Or Territorial Jurisdiction | 12/29/2014 | 5 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)    dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

May 6, 2019
Date of Imposition of Judgment

Signature of Judge

Sharon Johnson Coleman, United States District Judge
Name and Title of Judge

5-20-2019
Date

ILND 245B (Rev. 04/19/2019) Judgment in a Criminal Case
Sheet 2 – Imprisonment

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
120 months as to count 1, 2 and 3 of the Indictment; 60 months as to count 4 of the Indictment; 12 months as to count 5 of the Indictment.
Terms to run concurrent to each other and concurrent to the terms imposed in cases 12 CR 723-1 and 13 CR 703-1.

☒        The court makes the following recommendations to the Bureau of Prisons: Defendant to serve his term of imprisonment at the

         Butner FCC facility or at the Pekin FCI facility.

☒        The defendant is remanded to the custody of the United States Marshal.

☐        The defendant shall surrender to the United States Marshal for this district:

         ☐        at        on

    ☐        as notified by the United States Marshal.

    ☐        The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

         ☐        before 2:00 pm on

         ☐        as notified by the United States Marshal.

         ☐        as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this
judgment.

                                        _____
                                        UNITED STATES MARSHAL


                                  By    _____
                                        DEPUTY UNITED STATES MARSHAL

ILND 245D (Rev. 04/29/2019) Judgment in a Criminal Case for Revocation
Sheet 3 – Supervised Release

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of: three (3) years as to counts 1, 2, 3 and 4 of the Indictment; one (1) year as to count 5 of the Indictment. Terms to run concurrent to each other and concurrent to the terms of supervised release imposed in cases 12 CR 723-1 and 13 CR 703-1.

You must report to the probation office in the district to which you are released within 72 hours of release from the custody of the Bureau of Prisons. You shall report to sentencing Judge or one sitting in her stead, on status to review conditions after review of medical/mental health record and conditions of MSR pursuant to 18 U.S.C. 3553(a). The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**
- ☒ (1) you shall not commit another Federal, State, or local crime.
- ☒ (2) you shall not unlawfully possess a controlled substance.
- ☐ (3) you shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, if an approved program is readily available within a 50-mile radius of your legal residence. [Use for a first conviction of a domestic violence crime, as defined in **§ 3561(b)**.]
- ☐ (4) you shall register and comply with all requirements of the Sex Offender Registration and Notification Act **(42 U.S.C. § 16913)**.
- ☒ (5) you shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.
- ☐ (6) you shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release. [This mandatory condition may be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse by the defendant.]

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions** — The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D)**; and conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**. The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**
- ☐ (1) you shall provide financial support to any dependents if you are financially able to do so.
- ☐ (2) you shall make restitution to a victim of the offense under **§ 3556** (but not subject to the limitation of **§ 3663(a)** or **§ 3663A(c)(1)(A)**).
- ☐ (3) you shall give to the victims of the offense notice pursuant to the provisions of **§ 3555**, as follows: ▓▓▓▓
- ☒ (4) you shall seek, and work conscientiously at, lawful employment or, if you are not gainfully employed, you shall pursue conscientiously a course of study or vocational training that will equip you for employment.
- ☐ (5) you shall refrain from engaging in the following occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in the following specified occupation, business, or profession only to a stated degree or under stated circumstances; (if checked yes, please indicate restriction(s)) ▓▓▓▓.
- ☒ (6) you shall not knowingly meet or communicate with any person whom you know to be engaged, or planning to be engaged, in criminal activity and shall not:
  - ☐ visit the following type of places: ▓▓▓.
  - ☒ knowingly meet or communicate with the following persons: Any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in 8 U. S. C. 1189) , or who are, or claim to be, involved with violent acts, or advocating for acts of violence; and, communicating with any persons who are located outside of the United States with the exception to family members and persons who are located outside of the United States with the exception to family members and persons previously identified and approved by the Probation Office.
- ☐ (7) you shall refrain from ☐ any or ☐ excessive use of alcohol (defined as ☐ having a blood alcohol concentration greater than 0.08; or ☐       ), and from any use of a narcotic drug or other controlled substance, as defined in **§ 102** of the Controlled Substances Act (**21 U.S.C. § 802**), without a prescription by a licensed medical practitioner.
- ☒ (8) you shall not possess a firearm, destructive device, or other dangerous weapon.

ILND 245D (Rev. 04/29/2019) Judgment in a Criminal Case for Revocation
Sheet 3 – Supervised Release

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

☒  (9)  ☐  you shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.

☒  you shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider

☐  you shall participate, at the direction of a probation officer, in medical care; (if checked yes, please specify: _____ .)

☐  (10)  (intermittent confinement): you shall remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling _____ [no more than the lesser of one year or the term of imprisonment authorized for the offense], during the first year of the term of supervised release (provided, however, that a condition set forth in §3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with § 3583(e)(2) and only when facilities are available) for the following period _____ .

☐  (11)  (community confinement): you shall reside at, or participate in the program of a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of supervised release, for a period of _____ months.

☐  (12)  you shall work in community service for _____ hours as directed by a probation officer.

☐  (13)  you shall reside in the following place or area: _____ , or refrain from residing in a specified place or area: _____ .

☒  (14)  you shall refrain from knowingly leaving the federal judicial district where you are being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

☐  (15)  you shall report to a probation officer as directed by the court or a probation officer.

☒  (16)  ☒ you shall permit a probation officer to visit you ☒ at any reasonable time or ☐ as specified: _____ ,
    ☒ at home    ☒ at work    ☒ at school    ☒ at a community service location
    ☒ other reasonable location specified by a probation officer (excluding inside place of worship)
    ☒ you shall permit confiscation of any contraband observed in plain view of the probation officer.

☒  (17)  you shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. You shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

☒  (18)  you shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

☐  (19)  (home confinement)

    ☐  (a)(i) (home incarceration) for a period of __ months, you are restricted to your residence at all times except for medical necessities and court appearances or other activities specifically approved by the court.

    ☐  (a)(ii) (home detention) for a period of __ months, you are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the probation officer.

    ☐  (a)(iii) (curfew) for a period of __ months, you are restricted to your residence every day.

    ☐  from the times directed by the probation officer; or ☐ from __ to __.

    ☐  (b) your compliance with this condition, as well as other court-imposed conditions of supervision, shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and you shall abide by all technology requirements.

    ☐  (c) you shall pay all or part of the cost of the location monitoring, at the daily contractual rate, if you are financially able to do so.

☐  (20)  you shall comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by you for the support and maintenance of a child or of a child and the parent with whom the child is living.

☐  (21)  (deportation): you shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, you shall not remain in or enter the United States without obtaining, in advance, the express written consent of the United States Attorney General or the United States Secretary of the Department of Homeland Security.

☒  (22)  you shall satisfy such other special conditions as ordered below.

ILND 245D (Rev. 04/29/2019) Judgment in a Criminal Case for Revocation
Sheet 3 -- Supervised Release
Judgment – Page 5 of 8

DEFENDANT:  ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

☒ (23) You shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

☐ (24) Other:

**SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)**
The court imposes those conditions identified by checkmarks below:

**During the term of supervised release:**

☐ (1) if you have not obtained a high school diploma or equivalent, you shall participate in a General Educational Development (GED) preparation course and seek to obtain a GED within the first year of supervision.

☒ (2) you shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

☐ (3) you shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least _____ hours of community service per week at the direction of the probation office until gainfully employed. The total amount of community service required over your term of service shall not exceed _____ hours.

☐ (4) you shall not maintain employment where you have access to other individual's personal information, including, but not limited to, Social Security numbers and credit card numbers (or money) unless approved by a probation officer.

☐ (5) you shall not incur new credit charges or open additional lines of credit without the approval of a probation officer unless you are in compliance with the financial obligations imposed by this judgment.

☒ (6) you shall provide a probation officer with access to any requested financial information requested by the probation officer to monitor compliance with conditions of supervised release.

☐ (7) within 72 hours of any significant change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments, you must notify the probation officer of the change.

☐ (8) you shall file accurate income tax returns and pay all taxes, interest, and penalties as required by law.

☐ (9) you shall participate in a sex offender treatment program. The specific program and provider will be determined by a probation officer. You shall comply with all recommended treatment which may include psychological and physiological testing. You shall maintain use of all prescribed medications.

  ☐ You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall consent to the installation of computer monitoring software on all identified computers to which you have access and to which the probation officer has legitimate access by right or consent. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

  ☐ The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

  ☐ You shall not possess or use at any location (including your place of employment), any computer, external storage device, or any device with access to the Internet or any online computer service without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system

  ☐ You shall not possess any device that could be used for covert photography without the prior approval of a probation officer.

  ☐ You shall not view or possess child pornography. If the treatment provider determines that exposure to other sexually stimulating material may be detrimental to the treatment process, or that additional conditions are likely to assist the treatment process, such proposed conditions shall be promptly presented to the court, for a determination, pursuant to **18 U.S.C. § 3583(e)(2)**, regarding whether to enlarge or otherwise modify the conditions of supervision to include conditions consistent with the recommendations of the treatment provider.

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

□   You shall not, without the approval of a probation officer and treatment provider, engage in activities that will put you in unsupervised private contact with any person under the age of 18, and you shall not knowingly visit locations where persons under the age of 18 regularly congregate, including parks, schools, school bus stops, playgrounds, and childcare facilities. This condition does not apply to contact in the course of normal commercial business or unintentional incidental contact

□   This condition does not apply to your family members: ▢ [Names]

□   Your employment shall be restricted to the judicial district and division where you reside or are supervised, unless approval is granted by a probation officer. Prior to accepting any form of employment, you shall seek the approval of a probation officer, in order to allow the probation officer the opportunity to assess the level of risk to the community you will pose if employed in a particular capacity. You shall not participate in any volunteer activity that may cause you to come into direct contact with children except under circumstances approved in advance by a probation officer and treatment provider.

□   You shall provide the probation officer with copies of your telephone bills, all credit card statements/receipts, and any other financial information requested.

□   You shall comply with all state and local laws pertaining to convicted sex offenders, including such laws that impose restrictions beyond those set forth in this order.

□ (10)  you shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of your gross earnings minus federal and state income tax withholdings.

☒ (11)  you shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the prior permission of the court.

□ (12)  you shall pay to the Clerk of the Court $▢ as repayment to the United States of government funds you received during the investigation of this offense. (The Clerk of the Court shall remit the funds to ▢ (list both Agency and Address.)

□ (13)  You shall observe one Reentry Court session, as instructed by your probation officer.

☒ (14)  Other: You shall attend violent extremism counseling from providers as directed by the Probation Office, and agreed to by the Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant, or upon order of the Court. The defendant shall also authorize the release of any mental health and/or violent extremism counseling records to the probation officer.

You shall not possess or use at any location (including your place of employment), any external storage device without the prior approval of a probation officer.

You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall identify all computers to which you have access. You shall consent to the installation of computer monitoring software on all computers to which you have access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

You shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

You shall be required to submit to periodic polygraph testing at the direction of the probation office as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

Case: 1:15-cr-00487 Document #: 265 Filed: 08/08/24 Page 1 of 4 PageID #:2063
ILND 245B (Rev. 04/19/2019 Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties
Case: 24-2360    Document: 41-2    RESTRICTED    Filed: 12/03/2025    Pages: 159 (146 of 159)

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $425.00 | $.00 | Waived | $.00 |

☐    The determination of restitution is deferred until        . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

   If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

   ☐    Restitution amount ordered pursuant to plea agreement $

   ☐    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**. All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

   ☐    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

      ☐    the interest requirement is waived for the        .

      ☐    the interest requirement for the        is modified as follows:

   ☐    The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
* Findings for the total amount of losses are required under **Chapters 109A, 110, 110A, and 113A of Title 18** for offenses committed on or after September 13, 1994, but before April 23, 1996.

Case: 15-15-00487 Document #: 2685 Filed: 08/08/24 Page 29 of 84 PageID #: 50262
ILND 245B (Rev. 04/19/2019) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments
Document: 41-2    RESTRICTED    Filed: 12/03/2025    Pages: 647 of 159)
Case: 24-2370
Judgment — Page 7 of 159)

DEFENDANT: ADEL DAOUD
CASE NUMBER: 1:15-CR-00487(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒ Lump sum payment of $425.00 due immediately.

    ☐ balance due not later than      , or

    ☐ balance due in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal      *(e.g. weekly, monthly, quarterly)* installments of $      over a period of      *(e.g., months or years)*, to commence      *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal      *(e.g. weekly, monthly, quarterly)* installments of $      over a period of      *(e.g., months or years)*, to commence      *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within      *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if Appropriate |
|---|---|---|---|

**See above for Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court cost

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF NextGen 1.6.3
### Eastern Division

UNITED STATES OF AMERICA

                        Plaintiff,

v.                                      Case No.: 1:12−cr−00723

                                      Honorable Matthew F. Kennelly

Adel Daoud

                        Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, December 20, 2022:

      MINUTE entry before the Honorable Matthew F. Kennelly as to Adel Daoud: In person status and motion hearings held on 12/20/2022. Defendant's motion to withdraw the plea [417] is denied as to the reasons stated more fully on the record. Defendant's request to remove counsel [424] is granted, but Ms. Michaelis is to remain on as standby counsel. A telephonic status hearing is set for 2/2/2022 at 8:30 a.m. The following call−in number will be used for the hearing: 888−684−8852, access code 746−1053. The Court will make the necessary arrangements to have the defendant participate by telephone. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 12 CR 723 |
| | ) | |
| ADEL DAOUD | ) | |
| -------------------------------------------------- | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 13 CR 703 |
| | ) | |
| ADEL DAOUD | ) | |
| -------------------------------------------------- | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 15 CR 487 |
| | ) | |
| ADEL DAOUD | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

This decision concerns several matters that are before the Court for decision

and, as to certain of those matters, supplements the Court's oral ruling at the telephonic

hearing on February 23, 2024.

**A.    (1)    Defendant's "A supplement to my sentencing memorandum / motion
to squash [sic] arrest or dismiss indictment / motion to impeach the UCE and
CHS in the fake bombing and murder for hire cases" (No. 12 CR 723, dkt. 513, No.
13 CR 703, dkt. 196)
       (2)    Defendant's "Motion for explanation" (No. 12 CR 723, dkt. 527; No. 13
CR 703, dkt. 210; No. 15 CR 487, dkt. 219)**

A lengthy filing made by Mr. Daoud in December 2023 starts off stating that it is

"a supplement to my last sentencing memorandum."  *See* ECF p. 13 of 167.  But the

filing's title suggests more than that:  it proposes dismissal of the 2012 and 2015

charges and asks to "impeach" the UCE and CHS. The term "UCE" is used to refer to the undercover government employee with whom Mr. Daoud planned the bombing as charged in the 2012 case. The term "CHS" is used to refer to the informant Mr. Daoud solicited to kill the UCE as charged in the 2015 case.

If one doesn't count the December 2023 filing's table of contents or its attached exhibits, it is 134 pages long. The Local Rules of this Court—for as long as the undersigned judge can remember—have prohibited motions or briefs exceeding 15 pages unless the filer gets advance permission from the Court to file a longer submission. *See* N.D. Ill. Local Rule 7.1. This filing by Mr. Daoud is *nine times longer* than the 15-page limit. Despite this, Mr. Daoud did not ask, either before or when filing it, for permission to file an excess-length memorandum. Mr. Daoud's *pro se* status does not help him here. As the Court carefully explained to Mr. Daoud when he decided to proceed without counsel, he does not get any special breaks on the rules of procedure due to his *pro se* status. The Court would not have permitted a motion or memorandum of this length if Mr. Daoud had asked in advance, and the Court will not permit it now, after the fact. The filing is stricken, at least to the extent it is considered as a motion— which appears to be how Mr. Daoud intends it.

Even if not stricken, this submission by Mr. Daoud, taken as a request to dismiss the indictment, lacks merit. His contention is that the evidence shows he was entrapped or coerced into committing the offenses charged in the 2012 and 2015 indictments and that the undercover agent and the informant have lied in various respects. Even if so, that is not a basis for dismissal of charges. Rather, entrapment is a defense addressed at a trial, largely because it involves inherently factual inquiries regarding predisposition

2

and inducement.  On the contention that government witnesses—the UCE and the CHS—have made false statements, *Napue v. Illinois*, 360 U.S. 264 (1959), says that the government's knowing presentation of false testimony *at a trial* represents a denial of due process if there is a reasonable likelihood that it influenced the outcome of the trial. Consistent with this, the remedy for a *Napue* violation is a new trial, *see Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Curescu*, 674 F.3d 735, 739 (7th Cir. 2012), not dismissal of the charges.  Here there was no trial; Mr. Daoud pled guilty.  In short, the proposition that either the undercover employee or the informant made false statements to the government, or during the sentencing hearing—even if established by Mr. Daoud—would not entitle him to dismissal of any of the charges.

The Court is not suggesting that material false statements by government witnesses don't matter.  Mr. Daoud can use the witnesses' claimed false statements or testimony to impeach their credibility and to argue that the Court should not rely on their statements for sentencing purposes.  And he can cite claimed false testimony by the undercover employee and the informant as a mitigating factor in the Court's consideration of an appropriate sentence.  But even if Mr. Daoud can demonstrate that one or both of these witnesses made false statements or gave false testimony, that does not entitle him to dismissal of the charges against him.  The Court therefore overrules Mr. Daoud's motions to the extent they seek dismissal of charges.

It may be that Mr. Daoud is contending that the claimed false statements and testimony by the undercover agent and the informant should entitle him to withdraw his guilty plea.  In particular, he contends, both in the sentencing memorandum supplement and his related "motion for explanation," that the facts show he is innocent.  Mr. Daoud's

"motion for explanation," filed earlier this month, specifically contends that this is a basis to withdraw his guilty plea.

The Court disagrees.  A defendant who has pled guilty does not have an absolute right to withdraw his guilty plea, even prior to sentencing—which is where the case is at this point, given the Seventh Circuit's reversal of the sentence imposed by Judge Coleman.  A defendant seeking to withdraw his guilty plea must show a "fair and just reason."  Fed. R. Crim. P. 11(d)(2)(B).  In considering a request to withdraw a guilty plea, a court is entitled to hold a defendant to the representations he made during the guilty plea colloquy.  *See, e.g., United States v. Rinaldi*, 461 F.3d 922, 927 (7th Cir. 2006)

Under normal circumstances, a defendant's innocence may constitute a fair and just reason warranting withdrawal of a guilty plea.  *See, e.g., Rinaldi*, 461 F.3d at 927; *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001); *United States v. Gomez-Orozco*, 188 F.3d 422, 425 (7th Cir. 1999).  But these are not normal circumstances. Mr. Daoud pled guilty under *North Carolina v. Alford*, 400 U.S. 25 (1970).  In other words, he pled guilty *even though he expressly continued to maintain his innocence*. And this was all quite clearly discussed on the record during the guilty plea colloquy. *See* Nov. 26, 2018 Tr. at 35-38.  After the government put on the record an extensive factual basis supporting a guilty plea, Mr. Daoud said this:  "I can say that the government's factual basis supports a conviction on each count, but I deny culpability and persist in my innocence.  And I wish to plead guilty."  *Id.* at 59; *see also id.* at 60 ("I mean, my understanding is I'm pleading guilty but I'm retaining my innocence.").  When questioned specifically about this, Mr. Daoud said the following:

DEFENDANT DAOUD:  . . .  I'm pleading guilty pursuant to Alford.

THE COURT:  All right. And Alford is what understanding? That's a lawyer -- that's lawyer talk, Alford.  So you need to tell me.  So you are not admitting that the facts are -- show your guilt, is that correct?  You maintain your innocence, is that correct?

DEFENDANT DAOUD:  Yes.

THE COURT:  All right.  Even though you admit that they have that evidence to present, is that correct?

DEFENDANT DAOUD:  Yes, ma'am.

THE COURT:  And you also are again maintaining your innocence despite the fact that you agree that that is the evidence that would be presented, and that evidence supports a finding of guilty, is that correct?

DEFENDANT DAOUD:  Yes, ma'am.

*Id.* at 63.

In other words, Mr. Daoud's claim of innocence is nothing new; he has contended this all along, including at the very hearing in which he nonetheless pled guilty.  If claimed innocence were an appropriate basis for withdrawal of a guilty plea by a defendant who pled guilty under *Alford*, that would amount to a rule under which an *Alford* plea could be withdrawn at will by a defendant.  That can't possibly be the law. Mr. Daoud has cited no cases that suggest this, and the Court has found none.  To the contrary, the law makes clear what should be obvious:  a defendant who has pled guilty under *Alford*, maintaining his innocence but pleading guilty anyway, doesn't get to withdraw his plea later simply by, again, maintaining his innocence.  *See United States v. Buckley*, 847 F.2d 991, 998 n.4 (1st Cir. 1988) ("This argument misses the whole point of an *Alford* plea.").  Mr. Daoud quite obviously has changed his mind and no longer thinks that pleading guilty was the right decision.  But that is not a "fair and just"

5

reason warranting withdrawal of his *Alford* plea.

To be sure, there is additional evidence that has been produced to the defense since Mr. Daoud's entry of his guilty plea, specifically the complete recordings made over an extended period in the cell in which Mr. Daoud and the informant were housed. These were produced only in the past several months. But Mr. Daoud has not identified anything from this, or from anything else not available to the defense at the time of his guilty plea, that materially impacts the validity of his *Alford*-based guilty plea. Nor has Mr. Daoud identified anything in the recently produced material that undermines or materially impacts the extensive factual basis for his guilty plea that was put on the record at the time of the plea colloquy. On the question of entrapment in particular, there may have been a viable basis for Mr. Daoud to assert that as a defense on the first and second cases (though not the third) and go to trial, but Mr. Daoud knew that at the time and chose to plead guilty nonetheless. He has pointed to nothing new that materially impacts that decision.

For these reasons, the Court overrules Mr. Daoud's motions to the extent they seek to withdraw his guilty plea.

## B.    Defendant's "motions to compel, impeach UCE and CHS, and dismiss – continued" (No. 12 CR 723, dkt. 515; No. 13 CR 703, dkt. 207; No. 15 CR 487, dkt. 207)

The Court denies this motion, for the reasons just described, to the extent it seeks dismissal of the charges or withdrawal of Mr. Daoud's guilty plea. The motion also includes several other requests, which the Court addressed at the February 23, 2024 hearing and addresses here again. Again, the term "UCE" is used to refer to the undercover government employee with whom Mr. Daoud planned the bombing as

6

charged in the 2012 case.  The term "CHS" is used to refer to the informant Mr. Daoud solicited to kill the UCE as charged in the 2015 case.

      1.    "I want any and all copies of 9/14/12 [recording] and every UCE meeting." The government has represented on multiple occasions that it has produced all such recordings.  The Court accepts the government's representation and has no basis to dispute it.  Regarding the September 14, 2012 recordings, the Court acknowledges that they are difficult to hear in spots because the speakers are speaking quietly and/or there is background noise.  But the Court was able to hear everything on the recordings (on both versions that were provided, a "hawk" file and a ".wav" file) with the aid of headphones, as well as everything on the separate short recording (identified as "AZ004") made from a recording device that was in the vehicle where Mr. Daoud and the undercover employee were both present.  There do not appear to be any gaps or alterations.  The Court also disagrees with Mr. Daoud's contention that the various versions of the recording differ.  Specifically, the Court has listened to them, carefully, and discerns no differences.  The government has also so represented.

      2.    "I want all the CHS audio, unaltered."  The government has represented on multiple occasions, including during the February 23 hearing, that it has produced all of these recordings and that none of them have been altered.  Again, the Court has no basis to dispute this.  Mr. Daoud's request is therefore moot.

      3.    "I want the MCC record on who took my blood [on] 1/31/23."  During the February 23 telephonic hearing, Mr. Daoud explained that he needed this information to attempt to impeach a witness who testified at the sentencing hearing before this Court, specifically, a witness who denied making a particular statement to Mr. Daoud while

drawing blood from him and appeared to deny even drawing blood.  The Court has directed the MCC to produce Mr. Daoud's medical records for January 2023 to standby counsel; it is possible that the records will identify the person who drew the blood. Aside from this, however, the information that Mr. Daoud seeks is not in the possession or control of the government (i.e., the prosecution team).

4.    "I want CHS William Vincent Paschal's sentencing transcript."  Mr. Paschal was sentenced in state court.  This transcript is not in the possession or control of the government.  The Court directed Mr. Daoud's standby counsel to obtain the transcript. Counsel reported at the February 23 hearing that she had obtained the transcript and was in the process of getting it to Mr. Daoud at the MCC.

5.    "I want the unedited transcript of the most recent resentencing hearing." This request relates to Mr. Daoud's contention that a word (in Arabic) was omitted from a transcript; he suggests the transcript was "altered."  That is just plain incorrect.  The court reporter prepares the transcript, and no one—not the Court, the government, or the defendant—is able to alter it.  As the Court explained during the February 23 hearing, court reporters are human and thus sometimes make mistakes.  As the Court explained during the hearing, if Mr. Daoud believes the transcript contains an error, he should identify it by date, page, and line number, and the Court will direct the Court reporter to re-listen to the audio recording of the hearing to determine if the transcript needs to be corrected.

6.    "I want UCE and CHS impeached for their lies fundamental to their cases."  As the Court explained during the February 23 hearing, Mr. Daoud will have the opportunity, before the Court imposes sentence, to make arguments regarding the

8

weight and consideration to be given to the evidence offered in connection with sentencing—including the statements by the undercover employee and the informant.

7.      "I want my cases dismissed because the main witnesses, mainly UCE and CHS, are liars, and I got all this evidence about CHS after my Alford plea, and I just got this audio of the last few minutes of 9/14/12."  First of all, the Court disagrees that Mr. Daoud "just got" the September 14, 2012 audio recordings; they were produced to his counsel years ago, long before he pled guilty.  Second, the recordings made at the Kankakee County Jail in the cell housing Mr. Daoud and the informant were not timely produced by the government prior to Mr. Daoud's guilty plea.  Rather, they were produced only within the last few months.  Mr. Daoud has now had an opportunity to review them, though the Court acknowledges that given his custodial status, review of recorded evidence is cumbersome and not easy.  But Mr. Daoud cites no legal or other authority supporting the proposition that the late production of these recordings should, as he requests, result in dismissal of the charges against him.  Nor has he identified (or attempted to identify) anything about the recordings or their late production that would warrant allowing him to withdraw his guilty plea.  On this point, the Court repeats what it told Mr. Daoud, in very pointed terms, during the February 23 hearing:  it would be wise for Mr. Daoud to resume being represented by counsel instead of representing himself, because counsel would be more familiar with the nature of the showing needed to warrant consideration of a request to withdraw Mr. Daoud's guilty plea.

For these reasons, the Court denies Mr. Daoud's "motions to compel, impeach UCE and CHS, and dismiss – continued."

9

**C.     Defendant's "motions to compel, impeach UCE and CHS, and dismiss – continued – continued" (No. 12 CR 723, dkt. 523; No. 13 CR 703, dkt. 198; No. 15 CR 487, dkt. 215)**

In this motion, Mr. Daoud represents that the recordings at the Kankakee Jail (the CHS recordings) are of different lengths even though the recording was ostensibly going all day, that is, for a 24-hour period. At the February 23 hearing, the Court directed the government to provide by March 8, 2024 a written representation that all of the Kankakee recordings have been produced, as well as information regarding their source, where they were maintained, and when they came into the government's possession. The Court has now received the government's submission. Mr. Daoud may file a reply by March 18, 2024.

Mr. Daoud again says in this motion that transcripts of the sentencing hearing have been altered. That is incorrect, as the Court has explained earlier in this order and at the February 23 hearing. As noted earlier, if Mr. Daoud sees an error or omission in the transcript, he should bring it to the Court's attention by date, page, and line number, and the Court will have the court reporter re-review the audio recording to make sure the written transcript is accurate.

**D.     "The original online post"**

The Court's order of October 23, 2023 (No. 12 CR 723, dkt. 500) refers to a request by the defendant for production of "the [online] post that started the investigation." The government responded that it had produced an FBI report describing the online post but that the post itself, as well as the method of its collection, are classified material and thus cannot be produced to Mr. Daoud. At the February 23 hearing, the Court directed the government to make an appropriate filing under the

10

Classified Information Procedures Act regarding the online post, by April 5, 2024. The Court will determine after reviewing that filing whether any further disclosures to Mr. Daoud are legally appropriate.

### Conclusion

For the reasons stated above, the Court denies the following motions:

- Case No. 12 CR 723, dkt. nos. 513, 515, 523, 527.

- Case No. 13 CR 703, dkt. nos. 196, 198, 207, 210.

- Case No. 15 CR 487, dkt. nos. 207, 215, 219.

Standby counsel is directed to promptly provide a copy of this order to Mr. Daoud.

Date: March 11, 2024

_____
MATTHEW F. KENNELLY
United States District Judge